The Pepsi Cola Bottling Co., Inc. filed a complaint against Bobby Wayne Pettway, the driver, and Namon Pettway, the owner, alleging negligence and wanton conduct in the operation of an automobile which collided with and damaged the plaintiff's delivery truck. On defendant's motion, George Harris, Jr., the truck driver, was added as a party plaintiff. Later, a passenger in the automobile, Jerry Pettway, brought a pro ami
complaint in negligence against Pepsi Cola and Harris.
In their answer, the defendants, Bobby Wayne Pettway and Namon Pettway, denied negligence or wantonness on their parts, pleaded contributory negligence of plaintiffs, and counterclaimed against plaintiffs for personal injuries and property damage. In their answer to Jerry Pettway's complaint, Pepsi Cola and its driver, Harris, denied negligence. In their answer to the counterclaim of Bobby Wayne Pettway and Namon Pettway, Pepsi Cola and Harris pled the general issue and contributory negligence.
The cases were consolidated for jury trial, and at that stage there were two plaintiffs, Pepsi Cola and Harris, both allegedly involved in the collision, and three defendants, Bobby Wayne, the driver, Jerry, the passenger, and Namon, the owner of the automobile. After both sides had rested, Pepsi Cola and Harris filed a written motion for a directed verdict against all defendants on the ground of negligence on the part of Bobby Wayne Pettway. During argument on this motion counsel for the defendants, in referring to the evidence, stated: "I think we're entitled to make a motion for directed verdict also." At the *Page 759 
conclusion of the argument on the motions the trial court ordered a directed verdict in favor of each side, i.e., in favor of Bobby Wayne Pettway and Namon Pettway in the action of Pepsi Cola and Harris against them; in favor of Pepsi Cola and Harris in the counterclaim against them by Bobby Wayne and Namon Pettway; and in favor of Pepsi Cola and Harris in the proami action brought against them by Jerry Pettway.
Motions for a new trial were filed by Namon Pettway and Jerry Pettway. In his motion, Namon Pettway alleged that the directed verdict was ordered against him on the ground of contributory negligence which, he contended, was not in issue in his counterclaim. Jerry Pettway's motion raised the same ground for his original action. Both motions were denied and Namon and Jerry Pettway appealed to the Court of Civil Appeals. Thereafter, the appeal was transferred to this Court.
In their brief the Pettways complain of the trial court's action granting a directed verdict in their favor on its own motion, and further point out that Rule 50, ARCP requires a statement of the specific grounds in support of such a motion when made. While the latter point is a correct position under the express language of the rule, Rule 50 (a), we do not believe that what was done here violated that requirement. The motion for a directed verdict may be oral even though the better practice dictates a written motion for the sake of clarity and to prevent misunderstanding. U.S. v. 363 Cases,More or Less, Mountain Valley Mineral Water, D.C.Ark. 1956,143 F. Supp. 219. Moreover, the colloquy between the trial court and the lawyers on the plaintiff's motion for directed verdict reveals that the Pettways' counsel himself sufficiently asked for a directed verdict and pointed out the grounds for this motion, although in disjointed fashion:
 "THE COURT: The evidence appears to me that both of them were negligent. Now we have a big truck that is bearing down on you and unfortunately I'll say this for the record too, you get out on the road this day and age and you meet a big truck, particularly those big old tractor-trailer rigs that weigh close to 100,000 pounds and they don't just take their half of the road, but they usually take the other part also. Now in my estimation, if you see that happen, if you see a truck coming towards you and you don't give him the road, you're negligent. If one were approaching me, I would give him the whole road if there's any way to get in that ditch without killing myself, but it looks like to me what we're faced with here is a situation where, according to the best light I can put on the evidence in favor of your client, is that the truck's left front wheel, which is where contact was made, was on the line. There's no way the accident could have happened had theirs not been on the line too because the left front of both vehicles collided. Isn't that correct?
 "MR. SANDERS: Yes, sir, but they also testified they were on their side of the road at all times. That again goes to the scintilla.
 "THE COURT: I don't think so. They testified that they were at all times on their side of the road, true, which is a statement in their own interest which, of course, the jury can believe or not believe, but I'm saying that from their own lips they say that the truck was, the Pepsi Cola truck was never over in the south lane, that at worst, it was on the line and I say that under those circumstances, how can this Court not say that the Defendants were contributorily negligent. Let's assume that the Pepsi Cola truck is negligent. You've still got a question of contributory negligence on the part of the Defendant. Now that's because the accident could not have happened if they were not also on the line.
 "MR. SANDERS: Judge, let me bring this to your attention. If the tires are on the line, that means that some portion of the truck is over.
 "THE COURT: Yes, sir. Now let's be realistic, Mr. Sanders. If they just *Page 760 
barely grazed each other, do you think the automobile that they were in would have been knocked backward and both of them knocked unconscious? No way.
 "MR. SANDERS: Your Honor, he testified that what happened was that it hit the front portion and it ran into the other portion that was sticking out and that's what knocked it back. Mr. Harris testified to that.
 "MR. PITTS: The truck is sitting like this and it ran down the cab and hit the other portion and bounced back.
 "MR. SANDERS: Yes, sir, Judge, but he testified that it hit the other portion and bounced back, that it just glanced and hit the other portion and bounced back and that was from his own mouth. I just don't believe this is a case for a directed verdict.
 "MR. PITTS: I believe there is evidence in the case that —
 "MR. SANDERS: (Interposing) The jury might very well come back — I don't think it's a case to be taken away from the jury.
 "MR. PITTS: If there was ever a case, this is it. There's no showing whatsoever of any negligence on this man driving that truck.
 "THE COURT: Well this is the position I'm in. If the jury came back in with a verdict in favor of the Defendants against this Plaintiff, I would have to set the verdict aside and in view of that, why should I let it go to the jury in the first place?
 "MR. SANDERS: Because there's a scintilla of evidence.
 "THE COURT: No, there is an inference built on an inuendo which doesn't amount to a hill of beans. Just because someone is hurt and because someone comes into Court and says that he was way over on his side of the road and this man was on the line, I don't see where you've got anything. I don't see where you've got anything.
 "MR. SANDERS: Judge, take this case most strongly against the movement. [sic] I would say that the verdict, the motion for directed verdict should be granted, but by the same token, I don't think there should be any finding of damages in favor of the Plaintiff. I think that the evidence, if it shows that the verdict should be directed, certainly it shows contributory negligence because you've got to take the evidence as it stands most strongly against the movement. [sic] I think we're entitled to make a motion for directed verdict also.
 "THE COURT: Well, what I'm saying is that the verdict of this Court would have to be that the parties would be left where they were found. There would be no finding of damages in favor of either party.
 "MR. PITTS: Judge, there is a scintilla of evidence as far as negligence is concerned on their side.
 "THE COURT: Well, it would have to go to the jury and —
 "MR. PITTS: (Interposing) On my portion. I'm not asking you to direct a verdict in my favor, saying the jury must find for them, for Pepsi Cola Bottling Company, I'm saying the case can go to the jury though on the question of their damages against them.
 "THE COURT: You're asking the Court to direct a verdict and you're asking the Court to enter a verdict.
 "MR. PITTS: You've got two separate cases, Judge. You've got to get that in mind also.
 I'm asking for a directed verdict on the counterclaim on the action against these parties back against Pepsi Cola Bottling Company and Goerge Paul Harris and then on a separate suit back.
 "MR. SANDERS: Judge, I might at this point call to the Court's attention, since there are four different suits here, that —
 "THE COURT: (Interposing) Three. There's no counterclaim in Jerry Pettaway's suit. *Page 761 
 "MR. SANDERS: But there's a counterclaim for Namon Pettaway. A counterclaim for Bobby Wayne Pettaway and a straight claim for Jerry Pettaway and a straight claim for Pepsi Cola Bottling Company.
 "MR. PITTS: I'll submit to you that what you say, while I disagree with you, if you want to take the whole case away from the jury, both sides of it, that suits me just fine.
 "THE COURT: When it comes to the Court on a motion of directed verdict, I consider the evidence as it pertains most strongly against the party making the motion and the evidence most strongly against the party making the motion is, that would be that both parties were guilty of negligence. I'll so find that."
Appellants also question the propriety of granting a directed verdict in favor of the plaintiffs/cross defendants, contending that there was evidence of negligence on the part of the Pepsi Cola truck driver which required submission of the case to the jury
It is axiomatic that a civil case must go to the jury if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint, and when a reasonable inference may be drawn which is adverse to the moving party, the motion is properly refused.Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972). If there was a scintilla of evidence supporting the cross-complaint of Namon Pettway and the complaint of Jerry Pettway, both alleging negligence on the part of Harris, the truck driver, then these defendants were entitled to have the jury weigh the evidence and decide the question of liability. What was the evidence?
The plaintiffs called three witnesses: Fuller, a state trooper; Maness, a deputy sheriff; and Harris, the co-plaintiff driver.
On direct examination trooper Fuller related his investigation of the accident at the scene, describing the roadway at the site as a fairly sharp curve, locating skid marks left on the north side by the Pepsi Cola truck, and debris, mud, and parts of a vehicle on the north side of the highway (the side on which the Pepsi Cola truck was traveling). In his opinion the point of impact was on that north side. He measured the width of the roadway. "twenty-one foot" (sic), and from the south side to the point of impact, which measured sixteen feet. On cross examination he identified part of the debris as mud from the vehicles which stretched across the road on the south side of the pavement.
Deputy Sheriff Maness testified that he took photographs of the accident and described the positions of the vehicles.
George Harris, Jr. testified that when he first saw the other vehicle it was "fixing to come into the curve," coming at him, and that he, Harris, was traveling between twenty and thirty-five miles an hour. He was on his side of the road and he "saw he wasn't going to make the curve, so I started running off the road." The car hit the (front) side of the truck and came down the cab, struck the side and bounced backward. He was close to a stop when struck, and the Pettway vehicle did not change its course of travel but came straight at him, the point of impact being on the north side.
On cross examination Harris stated that he had already gone into the bigger part of the curve at the time of the accident and had negotiated most of the curve, but he added that he was slowing down for the curve, and "coming into it applying my brakes slightly." It was a new truck and he was "fairly well used to it." He had driven it one day before. When he saw the other vehicle it was going "pretty fast," thirty or thirty-five miles per hour. At the conclusion of Harris' testimony, plaintiffs rested.
For the defendants/cross complainants and plaintiff Jerry Pettway, Bobby Wayne Pettway testified that he began driving the automobile about a thousand to two thousand feet from the accident site, when he met a Pepsi Cola truck coming into the curve. Bobby stated that he was on his *Page 762 
side, and the truck was on his side, about twenty-five or thirty feet away, and "we met right up on the line together." He stated further that the impact occurred on "my side," with the left side of his bumper coming in contact with the left side of the truck's bumper. On cross examination he stated that he tried to slow down to meet the truck, but he conceded that on an earlier occasion he had said that he was going about thirty or thirty-five when he started into the curve, and that he increased his speed, but he "didn't know what it meant then." He was "fighting the steering wheel" trying to miss the Pepsi Cola truck. He added that when he first saw the truck it was "in his lane . . . hugging the center line" and "up on the center line on my side" when he hit him. Then, when he hit it, the truck "wasn't over the center line" but "he was right on the center line." No portion of the truck was across the center line but was "right up on the center line." On redirect, Bobby described the truck as being wider in the back than the front, with the front being right on the line and the back wheels two to three feet from the center line "on my side."
Jerry Pettway, another witness for the defendants and for himself, testified that he had been driving earlier that morning but he had a headache and Bobby Wayne started driving. When they met the truck it "was just about in the curve, all the way in when we just began to go in. The front wheel on the line and this back wheel crossed it sort of crisscross . . . cater-cornered." He described the location of the car as being on "the right side going towards Boykin," not on the line or across the line.
Appellant Namon Pettway's answer and cross-complaint asserted the theories of simple negligence and contributory negligence against Pepsi Cola and Paul Harris, Jr. Indeed, there was no evidence introduced by plaintiffs of any fault, negligence or otherwise, on the part of Namon Pettway. In his complaint, Jerry Pettway pro ami asserted the theory of simple negligence against Pepsi Cola and Paul Harris, Jr. Again, there was no evidence of any fault of Jerry Pettway. As the record reveals, however, there was a scintilla of evidence on the issue of negligence on the part of Harris, the Pepsi Cola truck driver, for notwithstanding the inconsistencies in the testimony of Harris and Bobby Wayne Pettway, their testimony created a disputed fact with respect to the positions of the vehicles before the collision, their directions, and the point of impact. A jury might have inferred from this evidence that the delivery truck, in negotiating this curve in the road, was in the path of the oncoming Pettway car and in the attempt to avoid the collision struck, or was struck by, that car. Opposite inferences might be entertained also. In either case, defendant is entitled to the benefit of the rule that a question must go to the jury in a civil case if any reasonable inference arising from the evidence furnishes a scintilla in support of his theory. Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975). Issues of negligence are to be determined by the jury, as a general rule. Patterson v.Seibenhener, 273 Ala. 204, 137 So.2d 758 (1962).
For the error in directing a verdict against the appellants, the case is due to be and is reversed and remanded.
REVERSED AND REMANDED.
HEFLIN, C.J., and MADDOX, JONES and SHORES, JJ., concur.