Joseph H. PROCTOR, as Administrator, c/t/a of the Estate of Pinkie Sutton, Deceased, Plaintiff-Appellee,

v.

J. C. GISSENDANER, Defendant-Appellant.

No. 76–4239.

United States Court of Appeals, Fifth Circuit.

Sept. 5, 1978.

J. Gorman Houston, Jr., Eufaula, Ala., for defendant-appellant.

Robert B. Albritton, William Harold Albritton, Andalusia, Ala., for plaintiff-appellee.

Before TUTTLE, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

This appeal arises from a slander of title action in which the jury awarded a $40,000 [1] verdict to the plaintiff, as *administrator cum testamento annexo* of the estate of Pinkie Sutton. Jurisdiction is premised upon diversity of citizenship.

Pinkie Sutton, deceased, contacted an individual named William Bell in the early part of 1968 in order to have home improvements performed on her place of residence. As evidence of the contractual undertaking of Sutton, Bell allegedly obtained an executed "Work Contract" [2] specifying that 84 monthly payments of $48.19 were to be received by Bell. Additionally, Bell allegedly received a promissory note in the face amount of $4,047.96,[3] secured by a mortgage on the real estate in question. Both the note and the mortgage contain the alleged signature of "Pinkey Sutton Brown" and are dated February 29, 1968.

On February 29, 1968, the same day that the mortgage was allegedly executed, Bell transferred and assigned the mortgage to the defendant, J. C. Gissendaner, for $2,234.99. Gissendaner, who is in the business of purchasing mortgages, testified that he personally spoke with Pinkie Sutton prior to accepting the mortgage assignment from Bell. Gissendaner recorded the mortgage in the office of the Judge of Probate of Covington County, Alabama, on March 4, 1968. Shortly thereafter, a payment book entitled "Mortgage Payment Book" directing that payments be sent to "Gissendaner Mortgage Co." was mailed to Pinkie Sutton. Sutton had made fifty-five payments up to October 6, 1972, the date of her death, when payment ceased.

Joseph Proctor was appointed *administrator cum testamento annexo* on October 9, 1974. On April 10, 1975, the defendant caused to be published a notice of foreclosure of the mortgage in the Andalusia Star-News, a newspaper of general circulation in Covington County, Alabama. The notice of foreclosure was published despite the fact that judgment had been rendered against the defendant Gissendaner in at least four other cases involving forged mortgages and in which Gissendaner had purchased the mortgages from the same William Bell.

---

1. The plaintiff claimed compensatory damages in the amount of $8440. It is therefore quite obvious that a large portion of the jury verdict represents an award of punitive damages.

2. The record contains two such work contracts. Both specify that Sutton was to make 84 monthly payments of $48.19. The contracts differ, however, in that plaintiff's exhibit 11(9) is signed only by "Pinkey Sutton Brown" and is undated, whereas plaintiff's exhibit 11(10) was allegedly executed by "Pinkey Brown" and "Clifford Brown" and is dated February 14, 1968. The description of the work to be performed also differs slightly.

3. Interestingly, the note specifies that Pinkie Sutton Brown promises to pay the principal sum of $4047.96, together with interest at the rate of 8% per annum. The note further specifies that "Principal and interest shall be payable in 84 monthly installments of Forty Eight and 19/100 Dollars . . ." If 84 payments in the amount of $48.19 are made, the total amount paid will be $4047.96, the amount of *principal* called for by the note. Despite the specific reference to the payment of interest at the rate of 8% per annum, the note is therefore ambiguous as to whether the interest charge has been built into the principal or whether, as seems most unlikely, no interest is to be charged.

An action to restrain the defendant from proceeding with the foreclosure and to declare the mortgage a forgery was instituted by the plaintiff Proctor in the Circuit Court of Covington County, Alabama. The state court granted the temporary restraining order and subsequently declared the mortgage allegedly executed by "Pinkey Sutton Brown" to be a forgery.[4] The plaintiff then instituted suit for slander of title in state court. The defendant removed the action to federal court and the proceedings giving rise to this appeal followed.

The defendant urges several grounds, both legal and factual, in support of his contention that the judgment of the district court is due to be reversed. Finding the contentions of the defendant to be without merit, we affirm the judgment entered by the district court.

## I. ISSUES OF LAW

The defendant initially contends that this suit cannot be maintained because a cause of action for slander of title to real estate does not survive the death of the owner of the property. We are mindful of the body of Alabama law which clearly distinguishes between an "action" and a "cause of action" for purposes of survival.[5] Only the former survives in favor of the personal representative, subject to limited

4. Counsel for the plaintiff concedes that the validity of the signatures on the note and the work contracts have not been judicially determined. Counsel nevertheless concedes that a debt was incurred by Pinkie Sutton by virtue of receiving home improvements.

5. In *McDowell v. Henderson Mining Co.*, 276 Ala. 202, 160 So.2d 486 (1963), the administratrix of an estate brought suit against a mining company to recover damages for negligently causing the overflow of water onto the decedent's land prior to his death. No suit was instituted prior to the death of the decedent. Title 7, § 150 of the Alabama Code provides as follows:

> All actions and causes of action on contract, express or implied, and all personal actions, except for injuries to the reputation, survive in favor of and against personal representatives; and all causes of action survive against the personal representative of a deceased tort feasor.

The Court at the outset recognized the distinction between an "action" and a "cause of action". An "action" is a pending proceeding to determine the rights and liabilities of the parties whereas a "cause of action" is defined as "a legal wrong for which an 'action' may be, but has not been, brought in court." *Id.* at 488. The Court then noted that statutes dealing with the survival of "actions" are remedial and are therefore to be liberally construed, but statutes which allegedly provide for the survival of "causes of action" are in derogation of the common law and are to be strictly construed. Applying these principles to the case before it, the Alabama Supreme Court held that the statute only provides for the survival of personal "actions" and not "causes of action," unless the suit is *against* the personal representative of a deceased tort feasor.

The Court in *McDowell* likewise rejected Title 7, Section 151 and Title 61, Section 124 as a basis for the survival of a personal "cause of action" in favor of the personal representative. These sections provide as follows:

> Real actions to try the title, or for the recovery of the possession of lands, and actions for injuries to lands survive in favor of heirs, devisees, or personal representatives, and against heirs, devisees, tenants, or personal representatives according to their respective rights; and the court must direct the record and judgment to be so framed as to secure their rights and declare their respective interests.

> All proceedings to ascertain damages done to real property survive to the executors or administrators.

The court noted that Title 7, Section 151 only provides for the survival of "actions" for injury to land and not for "causes of action." Similarly, Title 61, Section 124 only provides for the survival of "proceedings". The court held that the term "proceedings" denotes that some form of legal action must have commenced prior to death in order for survival to be triggered. The court concluded that Alabama law contains no statutory authority for the survival of a personal "cause of action" for injury to real estate. *Accord, Carroll v. Florala Memorial Hospital, Inc.*, 288 Ala. 118, 257 So.2d 837 (1972).

Nor was this rule of law affected by the adoption of the Alabama Rules of Civil Procedure in 1975. Rule 25 of the Alabama rules, like its federal counterpart, provides that "If a *party* dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." (Emphasis added). The word "party", like the word "proceedings" in Title 61, Section 124, mandates that substitution of parties is only permissible when there is an action pending at the time of death. *See Golatte v. Mathews*, 394 F.Supp. 1203 (M.D. Ala.E.D.1975).

exceptions not applicable here. It is undisputed that the forged mortgage was filed for record during the lifetime of Pinkie Sutton and that no action for slander of title was filed by Sutton during her lifetime. We are nevertheless convinced that an action for slander of title can be maintained under the particular facts of this case. On April 10, 1975, more than three years after the death of Pinkie Sutton, the defendant caused to be published the notice of foreclosure on the property described in the forged mortgage. The act of filing the foreclosure notice constituted a separate and distinct slander of title for which the defendant may be held answerable in damages.[6] Our conclusion that this action may be maintained is premised upon the separate and distinct nature of the slander of title [7] perpetrated by the filing of the foreclosure notice, after the death of Pinkie Sutton, and in no way runs afoul of the well settled rule of law in Alabama that a personal "cause of action" generally does not survive in favor of the personal representative.[8]

The defendant next contends that, under Alabama law, an *administrator cum testamento annexo* is not a proper party to institute an action for slander of title when the testatrix has devised the realty in question to specified individuals. This contention is premised upon the consideration that under the law of Alabama title to realty owned by the decedent immediately vests in the decedent's heirs or devisees at the time of death. *See Little v. Gavin*, 244 Ala. 156, 12 So.2d 549 (1943). *Moebes v. Kay*, 241 Ala. 294, 2 So.2d 754 (1941).

■ Rule 17(a) of the Federal Rules of Civil Procedure provides in pertinent part that "Every action shall be prosecuted in the name of the real party in interest. An executor, administrator . . . may sue in his own name without joining with him the party for whose benefit the action is brought." The rationale underlying the rule is that by requiring suit to be brought by the real party in interest, the defendant can be shielded from subsequent suits on the same action and the judgment rendered can have proper res judicata effect. *United Federation of Postal Clerks, AFL–CIO v. Watson*, 133 U.S.App.D.C. 176, 184, 409 F.2d 462, 470 (1969), *cert. denied*, 396 U.S. 902, 90 S.Ct. 212, 24 L.Ed.2d 178 (1969). It is settled that in a diversity case we must look to the substantive rights afforded by state law in making the determination of whether the named party is a real party in interest. *United States v. 936.71 Acres of Land, State of Fla.*, 418 F.2d 551, 556 (5th Cir. 1969). In *936.71 Acres of Land* we noted that it is elementary that "The 'real party in interest' is the party who, by substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Id.*

---

**6.** The defendant has vigorously asserted that this action is barred by the Statute of Limitations. We find this contention to be without merit, regardless of the proper limitations period to be applied, because this suit was filed approximately 36 days after publication of the foreclosure notice.

**7.** We are mindful that the Alabama courts have adopted the "single publication" rule, which provides that "there is one single publication of an alleged libel in an edition of a magazine, periodical, or newspaper and that the plaintiff has one cause of action which commences upon such publication." *Akin v. Time, Inc.*, 250 F.Supp. 306 (N.D.Ala.S.D.1966). *Accord, Age-Herald Publishing Co. v. Huddleston*, 207 Ala. 40, 92 So. 193 (1921); *Age-Herald Publishing Co. v. Waterman*, 188 Ala. 272, 66 So. 16 (1913). Our conclusion in no way impugns the vitality of the "single publication" rule due to the different factual milieu present in the in-

stant case. This is not a case wherein the identical slander or libel was repeated in a different copy of a newspaper or periodical. In the case at bar, we are dealing with separate and distinct acts of slander of title, divorced by the passage of time and the content of the message.

**8.** Our conclusion that the filing of the notice of foreclosure constituted a separate and distinct slander of title renders it unnecessary to consider the plaintiff's contention that "slander of title based on allegations in an instrument filed for official permanent record is held to continue until the record is adjudged a nullity." Brief of appellee at 15. *See Dwelle v. Home Realty & Investment Co.*, 134 Kan. 520, 7 P.2d 522 (1932). *But see Old Plantation Corp. v. Maule Industries*, 68 So.2d 180 (Fla.1953); *Walley v. Hunt*, 212 Miss. 294, 54 So.2d 393 (1951).

We must, therefore, look to Alabama[9] law to determine whether Proctor, as *administrator cum testamento annexo*, is a proper party to maintain this suit. The starting point of our analysis is Title 7, section 89 of the Alabama Code, pursuant to which this action was commenced. Section 89 provides that:

The owner of any estate in lands may maintain an action for libelous or slanderous words, falsely and maliciously impugning his title.

The defendant contends that the plaintiff Proctor cannot be deemed to be an "owner of any estate" in the land in question because title to the property passed to the devisees immediately upon the death of Pinkie Sutton. Proctor counters with the contention that Title 61, section 243 of the Alabama Code confers the requisite estate in the case at bar. This section provides as follows:

Lands may be sold by the executor, or by the administrator with the will annexed, for the payment of debts, when the will gives no power to sell the same for that purpose, and the personal estate is insufficient therefor.

Proctor argues that the realty in question is the only asset of the estate of Pinkie Sutton, and, because claims aggregating in the amount of approximately $2,255 were filed against the estate during the six month statutory period,[10] it may be necessary for him to exercise the authority conferred by section 243.

We conclude that the authority conferred upon Proctor by section 243, as administrator with the will annexed, creates a sufficient "estate in lands" within the meaning of Title 7, section 89 so as to render him a proper party to maintain this action. First, the administrator has a *duty* to exercise the statutory authority granted by section 243 in the event that the personal estate is insufficient to pay the debts of the estate. *See Moebes, supra* ; *Boyte v. Perkins*, 211 Ala. 130, 99 So. 652 (1924). The realty passed to the devisees upon the death of

Pinkie Sutton but such passing was subject to the payment of debts and charges against the estate. The immediate passing at death must indeed be deemed to be a "conditional" passing because according to the non-claim statute, claimants have until six months after the granting of letters testamentary or of administration in which to file claims against the estate. Therefore, in a given case, it may not be possible to determine whether it will be necessary for the personal representative to sell realty to pay the debts until the six month statutory period has expired. *See Powell v. Labry*, 210 Ala. 248, 97 So. 707 (1923). Furthermore, considering the duty imposed by law upon the administrator in the event the personal estate is insufficient to pay the debts, we believe that it simply cannot be disputed that the administrator would be a proper party to maintain suit to declare a forged mortgage a nullity. It is elementary that the administrator could not effectively exercise the duty mandated by section 243 so long as the forged mortgage remained as a cloud on the title. We are likewise convinced that Proctor, as administrator, is clothed with a sufficient "estate in lands" to maintain suit for damages flowing from the foreclosure notice, the consequence of the forged mortgage.

Second, the right of an administrator to sell real estate for the payment of debts is wholly statutory and can be exercised only by the administrator and not by the heirs or devisees. *Ex Parte Stephens*, 233 Ala. 167, 170 So. 771 (1936). The statute therefore creates a duty which is peculiar to the administrator and for which he alone may be held personally liable. *See Moebes, supra*, at 759.

The foregoing principles demonstrate that an administrator with the will annexed has the duty imposed by law to sell realty for the payment of debts in the event that the personal property is insufficient to pay such debts. We simply cannot hold that under the facts of this case, wherein the

---

9. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

10. Code of Ala., Tit. 61, § 11.

personal assets of the estate were insufficient to pay the debts at the time suit was filed, that Proctor did not have a sufficient "estate in lands" within the meaning of Title 7, § 89 of the Alabama Code. This is especially true in light of the concession by the defendant that "If by substantive law it is the duty of an administrator to enforce the rights of the estate which he represents, then he is a proper party." Brief of Appellant at 13.

With respect to the power vested in an administrator with the will annexed by Title 61, section 243, the defendant makes two further arguments which we find it necessary to briefly comment upon. The defendant contends that Proctor cannot avail himself of the authority created by section 243 to support his position as a party because no petition for the exercise of the statutory authority had been filed in the probate court at the time this suit was filed. In so arguing, the defendant has ignored the fact that if Proctor is successful in this appeal it will not be necessary to sell the real estate.[11] The determinative factor, in our opinion, is that Proctor has the duty to sell the land in order to pay the debts if the personal estate is insufficient, and not whether a petition for the exercise of the authority had been filed at the time this suit was commenced.

Second, the defendant points out that the authority conferred by Title 61, section 243 may be exercised only for the payment of debts existing at the decedent's death. *Bolen v. Hoven,* 143 Ala. 652, 39 So. 379 (1905);

*Beadle v. Steele,* 86 Ala. 413, 5 So. 169 (1888). The defendant, however, has not alleged on appeal that there were no existing debts at the time of the death of Pinkie Sutton, or, alternatively, that the personal estate was sufficient to pay the claims filed against the estate. In any event, it cannot be disputed that, at the minimum, ad valorem property taxes which accrued until the date of death constitute existing debt within the meaning of *Bolen* and *Beadle.*[12]

## II. SUFFICIENCY OF THE EVIDENCE

■ Having crossed the threshold legal issues raised by the defendant, we now turn to the factual issue of whether there was sufficient evidence to warrant a jury finding that the defendant acted with malice in having the notice of foreclosure published in the Andalusia Star-News.[13] At the outset we must acknowledge that our role in passing upon the validity of the jury verdict rendered in this case is to be quite limited. In *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1288 (5th Cir. 1974), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974), we recognized the oft-cited rule concerning our role in reviewing the propriety of a jury verdict:

> As an appellate court, our sole function is to ascertain whether there is a rational basis in the record for the jury's verdict; we are forbidden to usurp the function of the jury by weighing the conflicting evidence and inferences and then reaching our own conclusion. (footnote omitted)

**11.** This case was tried before a jury which awarded a verdict of $40,000, which is more than sufficient to pay the claims and charges against the estate.

**12.** Our examination of the relevant cases reveals that a claim for the payment of such taxes need not be filed against the estate in order to preserve a specific lien against the property. *See Traweek v. Hagler,* 199 Ala. 664, 75 So. 152 (1917).

**13.** The Alabama Court of Appeals long ago recognized in *Coffman v. Henderson,* 9 Ala. App. 553, 63 So. 808, 809 (1913), that in order to state an actionable claim for slander of title the plaintiff must establish that there has been

"a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, or of some right of his, causing him special damage". . . . . Whatever be the statement, however, in order for it to form the basis of a right of action it must have been made, not only falsely, but maliciously. These elements are the very gist of the action, without both of which it does not exist.

Therefore, in the case at bar neither the award of compensatory nor punitive damages can stand unless the plaintiff has sustained his burden of introducing sufficient evidence to support a jury finding that the defendant acted maliciously.

Stated differently, "An appellate court should not substitute its own judgment unless there is a complete absence of substantial probative facts to support the jury's verdict . . . ." *Hobart Brothers Co. v. Malcolm T. Gilliland, Inc.*, 471 F.2d 894 (5th Cir. 1973), *cert. denied*, 412 U.S. 423, 93 S.Ct. 2736, 37 L.Ed.2d 150 (1973).[14] We shall therefore limit our inquiry to whether the record in this case reveals substantial evidence from which the jury could rationally conclude that the defendant acted with malice in publishing the notice of foreclosure subsequent to the death of Pinkie Sutton.

■ Our analysis must necessarily begin with a discussion of the proper meaning to be accorded to the term "malice" under Alabama law. In *Coffman v. Henderson*, 9 Ala.App. 553, 63 So. 808 (1913), the Alabama Court of Appeals held that in a slander of title action, recovery cannot be had if the claim was filed against the property in good faith or if the defendant had probable cause to believe the truth of his statement. Under such circumstances, there is no malice. On the other hand, the court noted that although the absence of probable cause is evidence of malice which may be considered by the jury, such absence does not per se establish malice. *See Lunsford v. Dietrich*, 93 Ala. 565, 9 So. 308 (1891). The conclusion to be drawn from *Coffman* is that while good faith or the existence of probable cause to believe that the claim is valid is a defense which negates the element of malice, the absence of probable cause must not necessarily lead to the conclusion that the defendant acted with malice.

The Alabama Supreme Court provided a much more definitive explication of the meaning of "malice" in *United States Fidelity & Guaranty Co. v. Miller*, 235 Ala. 340, 179 So. 239 (1938), which involved suit to redress the alleged malicious issuance of a search warrant. The court stated as follows:

> Malice implies the intentional doing of an unlawful act to the injury of another. A reckless act, without information leading to a bona fide belief, presents such a case of want of probable cause that malice may be inferred.

*Id.* at 241.

*Miller* therefore teaches that, in a given case, malice may be inferred from want of probable cause to support an action as well as from intentional conduct. The trial judge in the case at bar, however, instructed the jury that it could find a verdict for the plaintiff only if it found that the defendant recorded the mortgage or published the notice of foreclosure "with actual knowledge as to the forged character of the mortgage." R.Vol. III, 183.[15]

■ As to the recovery of punitive damages, the trial judge instructed the jury that "you cannot find punitive damages against Gissendaner in this case unless you first find that the defendant acted with actual malice against the plaintiff, and by 'actual malice' is meant that the defendant acted with positive desire and intention to annoy or injure the property of the plaintiff." [16] R.Vol. III, 183, 184. We have concluded that although *Miller* will permit the award of compensatory damages, at least, to redress reckless conduct, the evidence presented in the case at bar was sufficient to provide a rational basis from which the jury could conclude that the defendant possessed actual knowledge that the signature

---

14. Similarly, in *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969), we held that an issue should be submitted to the jury if there is "evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions."

15. The jury was further instructed as follows: If you find from the evidence of all of the circumstances regarding the mortgage that

the defendant, Gissendaner, acted in good faith in endeavoring to uphold or assert what he in good faith believed to be a valid claim under the mortgage, then the plaintiff cannot recover in the case, because there would be no malice.
R.Vol. III, 183.

16. *See Lee v. Crump*, 146 Ala. 655, 40 So. 609 (1906).

of "Pinkey Sutton Brown" was a forgery.[17] We likewise conclude that the evidence was sufficient to provide a probative basis from which the jury could conclude that the defendant published the foreclosure notice with the intent to annoy or injure the plaintiff's property.

The record reveals that the mortgage was assigned to the defendant by Bell on the same day it was allegedly executed by "Pinkey Sutton Brown" for a little more than one-half of the face amount of the note. The mortgage was signed by "Pinkey Sutton Brown" although the title opinion prepared by an attorney retained by the defendant showed that title was vested in "Pinkie Sutton."[18] Additionally, as we have pointed out above, the note is ambiguous as to the amount of interest to be paid.[19] Although all of these factors are probative evidence which the jury is entitled to consider in determining the mental state of the defendant at the time of the filing of the notice of foreclosure, we must candidly acknowledge that these factors alone certainly do not make out a strong case of malice, and it is highly questionable whether they constitute a prima facie showing of malice. We need not decide, however, whether these factors alone are sufficiently probative to coalesce to form a rational basis to support the jury verdict rendered in the case at bar. Were we to do so, we would ignore other highly probative evidence before the jury.

The plaintiff introduced into evidence the court files of four other cases involving forged signatures on mortgages which had been filed against the defendant. In each case, the defendant had purchased the mortgage from the same William Bell, and each case had proceeded to judgment or was settled *before* the defendant filed the notice of foreclosure in the case at bar. In *Feagin v. Gissendaner*, No. 7560, Circuit Court of Covington County, Alabama, the plaintiff alleged that Gissendaner had attempted to foreclose a mortgage in which the signature of the mortgagor was forged. After service of process, a decree pro confesso (default judgment) was rendered on November 20, 1970, more than five years before the notice of foreclosure was filed in this case. In *Simpson v. Gissendaner*, No. 7722, Circuit Court of Covington County, Alabama, the plaintiff alleged that the mortgage possessed by the defendant was a forgery. As in the present case, the alleged note and mortgage had allegedly been executed to secure the payment of an indebtedness arising from the performance of home improvements by the same William Bell. The case was settled on July 13, 1970, at which time the title of the plaintiff was quieted. Similarly, in *Simmons v. Gissendaner*, No. 8283, Circuit Court of Covington County, Alabama, suit was brought to declare invalid an alleged forged mortgage. The plaintiff had entered into a contract with Bell for the performance of home improvements. After service of process, a default judgment was rendered on June 3, 1971. Finally, in *Evans v. Gissendaner*, No. 8105, Circuit Court of Covington County, Alabama, the plaintiff alleged that a mortgage allegedly outstanding on her property was the result of forgery and fraud. Once again, the plaintiff had been the recipient of home improvements. Both the mortgage and the assignment were dated the same. A default judgment was entered on December 27, 1972.

The evidence outlined above provides an ample basis from which the jury could conclude not only that the defendant should have known at the time the foreclosure notice was published that the mortgage may be a forgery, but that he actually knew that the mortgage was a forgery. Additionally, it is equally clear that this

---

17. Because the evidence was sufficient to satisfy the higher standard imposed by the trial court, it would pass muster under the *Miller* "reckless" standard *a fortiori*.

18. The title opinion does reveal, however, that in 1963 a deed apparently conveying adjoining

property was executed by "Pinkey Brown Sutton."

19. There are also several differences in the two work contracts that were introduced into evidence.

evidence provides a probative basis from which the jury could rationally conclude that the defendant published the notice of foreclosure with the intent to injure or annoy the property of the plaintiff.[20] Whether we would have similarly reconciled the evidence and would have drawn the inferences therefrom in the same manner as did the jury is not the inquiry which we are to make on appeal. Our examination of the evidence is limited solely to the determination of whether sufficient probative evidence was introduced to support the verdict of the jury. Finding that sufficient evidence was introduced, we affirm the judgment of the trial court.

AFFIRMED.

---

**20.** The defendant contends that publication of the notice of foreclosure cannot constitute the basis for the recovery of compensatory or punitive damages because only count one of the complaint, claiming compensatory damages, mentions publication of the foreclosure notice, and because both counts seem to predicate the prayer for relief on recordation of the forged mortgage. This contention is without merit. Rule 15(b) of the Federal Rules of Civil Procedure provides that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be tried in all respects as if they had been raised in the pleadings." In the case at bar, the defendant stipulated that he "caused to be published in the Andalusia Star-News, a newspaper of general circulation in Covington County, Alabama, a notice of foreclosure of said mortgage. . ." R.Vol. III, p. 20. In Gibbs v. Randolph, 250 F.2d 41 (5th Cir. 1957), we held that a stipulation could operate as an express or implied amendment of the pleadings, within the meaning of Rule 15(b), when neither party placed into the record any reservations or restrictions on the use or significance of the stipulation, as in the case at bar.

More importantly, the record reveals that the trial judge instructed the jury that publication of the notice of foreclosure constitutes one of the acts alleged to be a slander of title. R.Vol. III, 180, 181. The defendant did not request that the judge modify the instruction to apply only to the count for compensatory damages or otherwise object to the instruction. In any event, the defendant was not prejudiced by the interjection of this issue into the suit because publication of the foreclosure notice was alleged in count one of the complaint, and, as we have mentioned, was included in the stipulation read to the jury. Under these facts, it is our conclusion that if the issue of whether publication of the foreclosure notice should give rise to to recovery of compensatory or punitive damages was not tried by the express consent of the parties, it was certainly done so with their implied consent. The fact that no formal amendment of the pleadings took place is of no consequence. Fed.R.Civ.P. 15(b).