Defendant, Jimmy Harrison, appeals from a judgment in the amount of $5,000 plus interest for an assault and denial of his motion for mistrial, and for judgment n.o.v. or, in the alternative, a new trial. Plaintiff, Johnnie L. Mitchell, cross-appeals from the order of the court granting a directed verdict in favor of defendant as to plaintiff's slander of title count in his complaint.
The facts show that David Harris and his wife had entered into a contract to buy four acres of land in Lauderdale County from Johnnie Mitchell and his wife for $12,000. Sometime 1afterward the Harrises, along with some friends, went to the site of the property to look it over. While there, defendant Harrison walked up to the truck where Mrs. Harris was sitting and asked what they were doing there. She replied that they were planning to buy the property and they were looking it over. Harrison told her and her husband and Mr. Tate, one of the friends, that the property belonged to him and not to Mitchell.
Several weeks later Mitchell and Harris, the prospective purchaser, went to the site of the property where they were to meet a surveyor who had been engaged to survey the property in accordance with Mitchell's warranty deed. While parked in the road in front of the subject property and before the surveyors arrived, Mitchell and Harris observed Harrison walk out of his house and walk toward them.
Mitchell informed Harrison that he was about to have the property lines surveyed. Harrison replied that no one, including Mitchell, would enter his property for that purpose. Mitchell and Harris started walking toward their car and Harrison walked back to his house. Upon reaching the car Harris told Mitchell, whose back was to Harrison's house, that Harrison was coming toward them with a shotgun. While walking toward Harris and Mitchell, Harrison was loading the shotgun.
Mitchell told Harris to go to a phone and call the sheriff and then Mitchell walked down the road toward Harrison. When they were about thirty or forty feet apart, with Mitchell in the road and Harrison on his property, an acrimonious conversation ensued, during which Harrison leveled his shotgun at Mitchell and said, "You sorry son-of-a-bitch, I'll kill you right now." He repeated that the property in question was his and no one was going on it to survey it or do anything else to it. *Page 1040 
Mitchell did not attempt to leave the scene or to disarm Harrison, but he did talk to him. Finally Harrison went back to his house and reappeared without his shotgun.
Shortly afterwards the police chief from a nearby town arrived and Harrison walked back down to where Mitchell and Harris were in the road. The policeman talked to Harrison and Mitchell and then left. Mitchell and Harris were the last to leave.
The survey was not made until several months later and in the meantime the Harrises had asked Mitchell to be released from the contract to purchase. They were released and their earnest money refunded.
Mitchell filed an action against Harrison in May 1979 for assault and slander of title to real estate. Trial was had before a jury. At the conclusion of plaintiff's case defendant moved for a directed verdict as to both counts of the complaint. The court denied the motion as to the assault count and granted it as to the slander of title count; and, after evidence from defendant and rebuttal from plaintiff, the case went to the jury on the assault count. A verdict in favor of plaintiff for $5,000 was returned. Harrison then filed his motion for judgment n.o.v. or, in the alternative, a new trial, which was denied.
In brief Harrison argues that Mitchell failed to prove an assault, that he failed to prove any damages, that he failed to prove he could have retreated and thereby avoided the encounter, and that the trial court erred in denying his motion for mistrial and its refusal to keep out of the trial extraneous matters that were prejudicial to his case.
In Western Union Telegraph Co. v. Hill, 25 Ala. App. 540,150 So. 709, cert. denied, 227 Ala. 469, 150 So. 711 (1933), the Court of Appeals of Alabama defined an assault as:
 [A]n intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.
After proof of an assault has been made, the jury may award the plaintiff nominal or compensatory damages "for the insult and the indignity, and for the hurt to the feelings, and for mental suffering and fright caused by [the] assault." RepublicIron Steel Co. v. Self, 192 Ala. 403, 68 So. 328 (1915). Moreover:
 Physical pain, mental suffering, or mental anguish, or all three, may be inferred by the jury to exist to some extent from proof of fright caused by a sudden, unprovocated, unjustifiable, assault with a pistol, accompanied with insulting language.
John R. Thompson Co. v. Vildibill, 211 Ala. 199, 100 So. 139
(1924). Punitive damages may be awarded for an assault, however, only upon proof that it was committed wrongfully and was accompanied by "insult or other circumstances of aggravation." Id.
The record contains sufficient evidence upon which the jury could have concluded that Harrison intentionally and unlawfully threatened to touch Mitchell in an angry manner under such circumstances as to lead Mitchell to believe that Harrison not only possessed an immediate ability to carry out his threat but that he would soon do so.
When Harrison pointed the loaded shotgun at Mitchell and said, "You sorry son-of-a-bitch, I'll kill you right now," Mitchell said he got excited and really did not remember too much about what Harrison said after the above statement. Mitchell also said, "[A]ll I could see then was the gun." He said, "I had gotten pretty nervous."
Based on this evidence we believe the jury could have concluded that Mitchell was experiencing mental suffering, mental anguish, and fright as a result of Harrison's acts and threats and thus was authorized to award compensatory damages.
Although the jury did not indicate that it was awarding plaintiff punitive damages, we believe such an award would be proper in the instant case because the assault was accompanied by insulting language. See John R. Thompson Co. v. Vildibill,supra. *Page 1041 
Harrison also argues that Mitchell could have retreated and avoided the assault. We do not believe that Mitchell was under a duty to retreat from a place where he had a legal right to be, i.e. a public roadway. See also W. Prosser, Handbook of the Law of Torts § 10 (4th ed. 1971). ("[T]he defendant is not free to compel the plaintiff to buy his safety by compliance with a condition which there is no legal right to impose.")
Harrison's next contention is that the jury award is excessive mainly because of the repeated efforts of plaintiff to present to the jury illegal and highly prejudicial matters that had no relation to the assault charge. We would note that the bulk of the matters that defendant has reference to were questions to which objections were made and sustained and in several instances the trial court advised the jury to disregard them because they had no bearing on the issues before the court. We would also note that the trial court overruled the motion for new trial and, where this is done, the favorable presumption attending the jury's verdict is strengthened.Carlisle v. Miller, 275 Ala. 440, 155 So.2d 689 (1963). We find no prejudicial error here.
Harrison's contention that the trial court erred in overruling his motion for a mistrial is also without merit.
 [A] trial judge is vested with a wide discretion in determining whether or not incidents which occur during the course of a trial affect the rights of either party to have a fair trial, and his action may not be reviewed unless it clearly appears that his discretion has been abused.
Boudrow v. H R Construction Co., 284 Ala. 60, 222 So.2d 154
(1969).
We have carefully examined the entire record in this case, including the many objections to the introduction of evidence and the rulings thereon by the trial court, and we are not persuaded that it clearly abused its discretion in denying the motion for a mistrial.
We now take up Mitchell's cross-appeal from the trial court's order granting a directed verdict to the slander of title count in his complaint.
At the close of plaintiff's case, the court granted defendant's motion for a directed verdict as to the slander of title count and made this statement:
 "I believe . . . the proof has failed to establish every essential element [of the slander of title count] and I grant the motion."
In Pettway v. Pepsi Cola Bottling Co., Ala., 337 So.2d 757
(1976), the Alabama Supreme Court said:
 It is axiomatic that a civil case must go to the jury if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint, and when a reasonable inference may be drawn which is adverse to the moving party, the motion is properly refused.
To recover for slander of title to realty a plaintiff must establish: (1) his ownership of the property slandered; (2) publication by the defendant of a false statement concerning his title; (3) malice by the defendant in publishing his statement; (4) publication of the statement to someone other than the plaintiff; (5) publication of the statement by the defendant in disparagement of plaintiff's property or his title thereto; and (6) special damages proximately caused by the publication of the statement. Womack v. McDonald, 219 Ala. 75,121 So. 57 (1929). The defendant's malice may be established by proof that he intentionally disparaged plaintiff's title to the property slandered or recklessly disparaged same without information sufficient to support a bona fide belief that he, and not the plaintiff, had paramount title to the property. SeeProctor v. Gissendaner, 579 F.2d 876 (5th Cir. 1978). Special damages may be demonstrated by proof that defendant's disparagement of plaintiff's title to the slandered realty "interrupted, or injuriously affected, some dealing of the plaintiff *Page 1042 
with his property." Ebersole v. Fields, 181 Ala. 421, 62 So. 73
(1913).
Taking the elements of a slander of title action in the order that we have listed them above, the evidence shows that Mitchell had a warranty deed to four acres of land abutting Harrison Road across from defendant Harrison's property and that this property was shown to the Harrises, who were prospective purchasers, by the real estate agent. The Harrises went to the site of the property at a later date and the husband, in the company of two other people, walked over the property that they had been told was the four acres in question. During this visit to the property, Harrison came out of his house and approached the Harrises. Harrison told the Harrises that Mitchell did not own the property in question because he (Harrison) was the owner of it and the property was not for sale. Harrison told Mrs. Harris that Mitchell would lie and cheat and that he could make up a deed. Harrison further stated that Mitchell did not own the land, that he cheated some people out of it. He said that Mitchell would say and do anything to get the money for the land.
The Harrises stated that they were told by the real estate agent that a survey needed to be made to establish the exact boundaries of the property. Harrison was requested to cooperate in having a survey made and he refused. He said no survey was going to be made because the property was his and he was not going to let anyone come on the property. To back up his statement that no one would go on the property to survey, Harrison pointed a loaded shotgun at Mitchell and told him that he (Harrison) would kill him.
After this encounter with Mitchell and the failure to get a survey made, the Harrises asked to be released from their contract to buy the land. They were released and their earnest money in the amount of $500 was returned to them.
We conclude that the record contains at least a scintilla of evidence in support of each and every element of the slander of title count in the complaint; consequently, we hold that the trial court erred in directing a verdict to this count of the complaint.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.