**Doris James PATTERSON,
et al., Plaintiffs,**

**v.**

**UNITED COMPANIES LENDING
CORP., etc., Defendant.**

**No. Civ. A. 97–D–303–N.**

United States District Court,
M.D. Alabama,
Northern Division.

April 17, 1998.

John A. Daugherty, Vestavia Hills, AL, Francis X. Lynch, Birmingham, AL, for Plaintiffs.

M. Christian King, Floyd D. Gaines, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant United Companies Lending Corp.'s Motion for Summary Judgment and supporting memorandum ("Def.'s Mem. Supp."), filed February 26, 1998.[1] Plaintiffs Doris James Patterson and Hueston C. Patterson responded in opposition ("Pls.' Resp.") on March 4, 1998, to which Defendant replied ("Def.'s Reply") on March 12, 1998. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's motion is due to be granted.

### JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties do not contest venue or personal jurisdiction.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete fail-

ure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

---

1. Defendant also filed a Motion to Dismiss on January 12, 1998, which Defendant supplemented on January 14, 1998. The matters contained in that motion are also embraced by the instant Motion for Summary Judgment, which contains evidentiary submissions that reach beyond the pleadings. Accordingly, the court will only ad-

dress the instant Motion for Summary Judgment, which has been fully briefed by the Parties. *See, e.g., Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir.1985) (motion to dismiss treated as one for summary judgment when matters outside the pleadings considered by the court); *see also* Fed.R.Civ.P. 12(b), 56.

An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### STATEMENT OF FACTS

On March 30, 1994, Rebecca Kelley ("Kelley") took out a loan with Defendant United Companies Lending Corporation in the amount of $30,400.00. At the time of the loan, a notarized quitclaim deed ("Deed"), bearing the signatures of Plaintiffs and dated March 17, 1994, had been recorded in the Lee County Office of Probate. This Deed purported to transfer the subject property from Plaintiffs to Kelley. The loan into which Kelley entered with Defendant was secured by the real estate described by this Deed. A mortgage on the property described by the Deed ("Mortgage") was, in turn, executed and recorded in the Lee County Office of Probate.

Kelley defaulted on her payments to Defendant and filed for Chapter 13 bankruptcy on July 31, 1995. In this filing, Kelley acknowledged her debt to Defendant and established a plan to continue making payments to Defendant. On October 4, 1995, however, Kelley's bankruptcy was dismissed for failure to meet the terms of the payment plan. On November 13, 1995, Kelley filed for bankruptcy a second time, again acknowledging her debt to Defendant and establishing a plan for continued payment. Kelley again failed to carry out the payment plan, and demand letters were sent by Defendant in December, 1995, and January, 1996.

On January 30, 1996, Defendant was contacted via telephone by Mike Williams ("Williams"), the attorney for Plaintiffs at that time. Williams represented that the Deed which conveyed the property from Plaintiffs to Kelley had been forged. Defendant later received a letter dated January 31, 1996, which confirmed the January 30, 1996 conversation. In addition, the letter stated that Plaintiffs disputed "any debt ... in regard to their homeplace, which is collateral on this loan," requested copies of the Mortgage file, and stated their intention to file an action to set aside the Deed as a forgery. In a letter dated February 14, 1996, Defendant acknowledged receipt of Williams' January 31 correspondence and stated that copies of the Mortgage file could not be released without Kelley's authorization.

On May 22, 1996, Defendant notified Kelley that Defendant was commencing foreclosure proceedings on the subject property, which would result in foreclosure if the mortgage were not, "reinstated" before July 1, 1996. Defendant had previously filed a motion to lift the bankruptcy court stay on the Mortgage, which had been granted.

On June 12, 1996, a foreclosure notice was published in the Auburn–Opelika News. After this notice was published, Defendant received a letter dated June 13, 1996 from Williams, containing affidavits from Kelley, Nelda Lumpkin (purported notary on the Deed), and Tena Barnes (purported witness to the Deed), supporting Plaintiffs' contention that the Deed had been forged by Kelley.

On June 26, 1996, Plaintiffs filed a Complaint for Recission of Deed and Request for Temporary Restraining Order and/or Preliminary Injunction in the Circuit Court of Lee County, Alabama ("Complaint for Recission"). Defendant ceased foreclosure proceedings at that time, and took no further steps to foreclose on the subject property. The June 26, 1996 Complaint for Recission was voluntarily dismissed by Plaintiffs on July 18, 1996.

On December 9, 1996, one of the current counsel for Plaintiffs, John Daugherty ("Daugherty"), sent a letter to Defendant demanding that the Mortgage be rescinded within 30 days from the date of the letter. Daugherty represented that Plaintiffs would sue Defendant if this request were not granted. On December 13, 1996, Kelley executed a second quitclaim deed which purported to convey the subject property back to Plaintiffs. This deed was recorded in the Lee County Office of Probate on December 16, 1996.

On March 5, 1997, Plaintiffs filed the instant action. Count One of their Complaint, which seeks recovery for slander of title,

alleges that Defendant made several false and malicious publications with the intent to injure Plaintiffs' property. Count Two of their Complaint, which seeks recovery for fraud, alleges that Defendant falsely represented that it had an existing interest in Plaintiffs' property.

### DISCUSSION

I. Fraud

Plaintiffs' Complaint seeks recovery for the alleged willful misrepresentations of Defendant. (Complaint ¶¶ 37–42.) In Alabama, the definition of legal fraud is found in Alabama Code § 6–5–101, which provides that "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and ácted on by the opposite party or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala.Code § 6–5–101 (1975).

■ In order to recover for a willful misrepresentation under Alabama law, Plaintiffs must therefore establish the following elements: (1) Defendant made a misrepresentation of a material fact; (2) Defendant made this misrepresentation willfully to deceive; (3) Plaintiffs reasonably relied on this misrepresentation under the circumstances; and (4) Plaintiffs sustained damage as a proximate consequence of the misrepresentation. Ala.Code 1975, § 6–5–101 (1975); *Foremost Insurance Co.*, 693 So.2d 409, 422 (Ala.1997) (citing *Harrington v. Johnson–Rast & Hays Co.*, 577 So.2d 437 (Ala.1991)); *see also Cecil Crews Chevrolet–Oldsmobile, Inc. v. Williams*, 394 So.2d 912, 914 (Ala.1981).[2]

■ Defendant argues that Plaintiffs' fraud claim fails because Plaintiffs present no evidence that Defendant acted willfully, recklessly, or mistakenly. (Def.'s Mem. Supp. at 6.) Plaintiffs' Complaint, however, alleges only willful misrepresentation, (*see* Complaint ¶¶ 37–42), which means that they must

prove that Defendant made a misrepresentation "willfully to deceive."[3] *See* Ala.Code 1975, § 6–5–101 (1975); *see also Foremost Insurance Co.*, 693 So.2d at 422; *Hughes v. Hertz Corp.*, 670 So.2d 882, 888 (Ala.1995); *McIntyre v. McLeod*, 678 So.2d 1105, 1107 (Ala.Civ.App.1995). Thus, Plaintiffs must establish both that Defendant had knowledge of the falseness of its representations and that Defendant intended to deceive Plaintiffs in making these representations. In the instant case, the court finds that, even when viewing the facts in a light most favorably to the nonmoving party [Plaintiffs], the facts do not support a finding that Defendant either had actual knowledge of the alleged falseness of its representations or intended to deceive anyone in its actions.

It is undisputed that Defendant had no knowledge of the alleged invalidity of the Deed when the Mortgage on the subject property was originally recorded in 1994. (*See* Pls.' Resp. at 8; Def.'s Reply at 6.) Thus, the allegations of willful misrepresentations arising from that publication will not survive summary judgment.

Plaintiffs, however, also contend that Defendant has engaged in willful misrepresentation by publishing the notice of foreclosure after Williams had sent notice of the alleged forgery in his January 31, 1996 letter. (Pls.' Resp. at 5; January 31, 1996 Letter of Williams ("Williams' January 31 Letter"), Ex. F to Pls.' Resp.) Regarding the publication of the foreclosure notice, the court finds that, although Defendant may have had reason to be suspicious of the Deed based on Williams' January 31, 1996 Letter, there is no evidence from which a reasonable jury could infer that actual knowledge existed.

The record title holder of the subject property at the time of publication, according to the Deed, was Kelley and not the Plaintiffs. (Fontenot Dep. at 52–56; *see also* the Deed.) Defendant had been involved in collection

---

2. In *Foremost Insurance Co.*, the Alabama Supreme Court changed the reliance standard from justifiable to reasonable for all cases filed after March 14, 1997. *See Foremost Ins. Co.*, 693 So.2d at 421.

3. Although a fraud claim may be brought for willful, reckless, or innocent misrepresentations, Plaintiffs have alleged only a willful misrepresentation in the instant case. (*See* Complaint ¶¶ 37–42); Ala.Code 1975, § 6–5–101 (1975); *Epps Aircraft, Inc. v. Exxon Corporation*, 859 F.Supp. 533, 537 (M.D.Ala.1993).

and bankruptcy proceedings against Kelley for several years without any reason to doubt the validity of the Deed or Mortgage. (Fontenot Dep. at 9–10, 52–56; Deposition of Hueston Patterson ("Patterson Dep.") at 9–10; Mortgage, Ex. C to Def.'s Mem. Supp.) In fact, the only indication that Defendant had that the Mortgage might be impaired prior to the publication of the foreclosure notice was Williams' telephone call and letter of January 30 and January 31, 1996. (Record of Williams' January 30, 1996 Telephone Call ("Williams' January 30 Call"), Ex. E. to Pls.' Resp.; Williams' January 31 Letter; Deposition of Greg Fontenot ("Fontenot Dep.") at 57–59.) No further legal action to set aside the Mortgage was taken by Plaintiffs until June 26, 1996, approximately two weeks after the June 12, 1996 publication of the foreclosure notice. (Fontenot Dep. at 67–70; Complaint for Recission, Ex. F to Def.'s Mem. Supp.) Moreover, no affidavits or other supporting documents were presented to Defendant to support Williams' contention that the Deed was forged until after the publication of the notice. (*See* Williams' June 13 Letter.) Thus, although Defendant may have had evidence before it to lead to a suspicion that the Deed might be forged, Defendant certainly did not have actual knowledge of the alleged forgery.

■ Finally, Plaintiffs contend that Defendant has engaged in willful misrepresentations for failing to remove the Mortgage once Williams had sent notice, and eventually proof, of the forgery. (Pls.' Resp. at 5.) The court finds that, even if Defendant had actual knowledge that the Deed was forged after it received Williams' June 13, 1996 letter, Plaintiffs' knowledge of the forgery defeats the willful misrepresentation claim. That is, once Plaintiffs acquired knowledge of the forgery and notified Defendant of the forgery, Defendant could not reasonably have intended to deceive Plaintiffs. At such time, Defendant knew that Plaintiffs themselves

believed the Deed to be a forgery, and that Plaintiffs in fact possessed evidence to support their contention that the Deed was forged. Any inference that Defendant's subsequent "failure" to remove or rescind the Mortgage was an attempt to mislead Plaintiffs into believing that the Deed was not actually forged is unsupported by the facts and clearly unreasonable.

■ In addition and in the alternative, the court also finds that Plaintiffs cannot meet the reliance element of willful misrepresentation under the instant facts. The reliance prong of willful misrepresentation, under Alabama law, requires that Plaintiffs rely reasonably on the alleged false misrepresentation. *See Foremost Insurance Co.,* 693 So.2d at 422. Where one has knowledge of the falsity of a representation or even reason to doubt the truth of a representation, however, reliance is not reasonable. *See Ramsay Health Care, Inc. v. Follmer,* 560 So.2d 746, 748 (Ala.1990); *Guillot v. Beltone Electronics Corp.,* 540 So.2d 648, 649 (Ala.1988); *Taylor v. Moorman Manufacturing Co.,* 475 So.2d 1187, 1189 (Ala.1985); *Bedwell Lumber Co., Inc. v. T & T Corp.,* 386 So.2d 413, 415 (Ala.1980). In the instant case, Plaintiffs clearly had knowledge that the Deed was forged from at least January of 1996. (*See* Williams' January 30 Call; Williams' January 31 Letter.) Reasonable reliance on Defendant's alleged misrepresentations, therefore, was not possible from that point forward.[4]

Thus, the court finds that Plaintiffs' claim for willful misrepresentation fails. Accordingly, summary judgment is due to be granted for Defendant on Plaintiffs' fraud claim, and the court moves to consider Plaintiffs' claim for slander of title to realty.

## II. Slander of Title

Under Alabama law an action for slander of title is provided for in Alabama Code § 6–5–211, which states that "[t]he owner of any

---

4. The court notes that Plaintiffs alleged that they "detrimentally relied on [Defendant's] misrepresentations in the form of legal expenses incurred in order to remove [Defendant's] cloud from [Plaintiffs'] title." (Pls.' Resp. at 6.) This assertion, however, misconstrues the "reasonable reliance" element of willful misrepresentation under Alabama law, as set forth above. In addition, the court notes that, to the extent that Plaintiffs desire to remove the "cloud" from their title, they might be best served by pursuing an action to set aside the Deed, such as their previously dismissed Complaint for Recission, in State Court.

estate in lands may commence an action for libelous or slanderous words falsely and maliciously impugning his title." Ala.Code § 6–5–211 (1975).

█ The Alabama Supreme Court has set forth the elements of slander of title to realty as follows: (1) ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) publication in disparagement of plaintiff's property or the title [thereto]; and (6) special damages proximately resulting from such publication. *Merchants National Bank v. Steiner*, 404 So.2d 14, 21 (Ala.1981); *see also* Harrison v. Mitchell, 391 So.2d 1038, 1041 (Ala.Civ.App.1980); *Womack v. McDonald*, 219 Ala. 75, 121 So. 57, 59 (1929). The defendant's malice may be established by proof that he intentionally disparaged plaintiff's title to the property slandered or recklessly disparaged plaintiff's title without information sufficient to support a bona fide belief that he, and not the plaintiff, had paramount title to the property. *See Proctor v. Gissendaner*, 579 F.2d 876, 881 (5th Cir. 1978).[5]

█ Defendant asserts that Plaintiffs' claim for slander of title fails because there is no evidence that it acted maliciously in the instant case. (Def.'s Mem. Supp. at 8.) As recently stated by the Alabama Supreme Court, "[m]alice does not equate with negligence." *Roden v. Wright*, 646 So.2d 605, 611 (Ala.1994) (citing *Alabama Power Co. v. Laney*, 428 So.2d 21 (Ala.1983)). Rather, "malice requires 'proof that [the defendant] intentionally disparaged [the] plaintiff's title to the property slandered or recklessly disparaged [it] without information sufficient to support a bona fide belief' in the veracity of the disparaging statement." *Id.* (quoting *Harrison v. Mitchell*, 391 So.2d 1038, 1041 (Ala. Civ.App.1980)). Stated differently, " 'if the defendant had probable cause for believing the statement, there can be in law no malice.' " *Id.* (quoting *Steiner*, 404 So.2d at 21).

Plaintiffs respond that Defendant is liable for slander of title in two respects. (Pls.' Resp. at 6.) First, Plaintiffs contend that Defendant is liable for "recklessly and negligently" publishing the foreclosure notice even after communications by telephone and letter in which Williams asserted that the Deed was forged. (*Id.*) indicated above, mere negligence cannot support a claim for slander of title, *Roden*, 646 So.2d at 611 (citing *Alabama Power Co. v. Laney*, 428 So.2d at 22–23), although recklessness can support such a claim, *id.* 646 So.2d at 611.

█ Under the facts of the instant case, viewing all evidence in a light most favorably to the non-moving party [Plaintiffs], the court finds that absolutely no evidence exists to support an inference of malice on the part of Defendant. Although arguably its actions might have risen to the level of negligence for not further inquiring into the validity of the Deed when Williams initially contacted them about the forgery, Defendant did not have any proof of the forgery until after the publication of the foreclosure notice. (*See* Williams' June 13 Letter; Def.'s Mem. Supp. at 8.)

Whether evidence of recklessness exists in the publication of the notice after Williams' June 13 Letter requires further inquiry. In *Roden v. Wright* the Alabama Supreme Court reviewed a lower court's granting of summary judgment for the defendant on a slander of title claim. 646 So.2d 605 (Ala. 1994). *Roden* concerned certain comments made by the defendants in a memorandum that discussed restrictions on plaintiff's deed. *Id.* 646 So.2d at 607. These comments were allegedly in error, and defendants had made them without specifically viewing plaintiff's deed, basing them upon assumptions drawn from their knowledge of other deeds in the same subdivision. *Id.* at 611–612. In addition, there was evidence that the parties had discussed the restrictions in question. *Id.* Nevertheless, the court held that the defendants did not "recklessly disparage [plaintiff's] title without information to support a bona fide belief." *Id.* at 612. The court so

---

**5.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of* *Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

held notwithstanding the fact that defendants had not specifically viewed the deed at issue or inquired further into the restrictions thereto. *Id.*

Likewise, in the instant case, there exists no evidence from which a reasonable jury could infer that Defendant recklessly published the foreclosure notice. As previously discussed, the record title holder of the subject property at the time of publication, according to the Deed, was Kelley and not the Plaintiffs. (Fontenot Dep. at 52–56; *see also* the Deed.) Defendant had been involved in collection and bankruptcy proceedings against Kelley for several years without any reason to doubt the validity of the Dead or Mortgage. (Fontenot Dep. at 9–10, 52–56; Deposition of Hueston Patterson ("Patterson Dep.") at 9–10; Mortgage, Ex. C to Def.'s Mem. Supp.) In fact, the only indication that Defendant had that the Mortgage might be impaired prior to the publication of the foreclosure notice was Williams' telephone call and letter of January 30 and January 31, 1996. (Williams' January 30 Call; Williams' January 31 Letter; Fontenot Dep. at 57–59.) No further legal action to set aside the Mortgage was taken by Plaintiffs until June 26, 1996, approximately two weeks after the June 12, 1996 publication of the foreclosure notice. (Fontenot Dep. at 67–70; Complaint for Recission, Ex. F to Def.'s Mem. Supp.) Moreover, no affidavits or other supporting documents were presented to Defendant to support Williams' contention that the Deed was forged until after the publication of the notice. (*See* Williams' June 13 Letter.) Thus, there existed ample information in the instant case to "support a bona fide belief" or provide "probable cause [to believe]" that Defendant had title at the time that the foreclosure notice was published. *Roden,* 646 So.2d at 611.

Plaintiffs also argue that Defendant has slandered Plaintiffs' title because it "refused to remove the cloud from [Plaintiffs'] title created by [Defendant's] recorded mortgage." (Pls.' Resp. at 6–7.) As indicated above, slander of title to realty requires proof of publication. *See Roden,* 646 So.2d at 611. Obviously, the initial recording of Defendant's Mortgage in 1994, when Kelley first borrowed money from Defendant and used the subject property as collateral, would qualify as publication. (*Id.; see* Fontenot Dep. at 9–10; Mortgage.) It is undisputed, however, that Defendant had no knowledge whatsoever that would lead it to doubt the validity of the Mortgage in 1994. Thus, no slander of title action based on that publication could succeed. *See Roden,* 646 So.2d at 611.

In fact, Plaintiffs contend:

"[w]hile it is true that [Defendant] had no knowledge that its mortgage was based on a forged quitclaim deed *at the time* the subject mortgage was recorded and consequently was not guilty of slander of title *at that point,* [Defendant] did become guilty of slander of title when [Defendant] persisted in ... maintaining its cloud on [Plaintiffs'] property ... after [Defendant] acquired knowledge that the subject mortgage was based on a forged quitclaim deed."

(Pls.' Resp. at 8.) The difficulty with Plaintiffs' argument is that it fails to point to a second malicious publication that would support a claim for slander of title. In essence, Plaintiffs appear to be arguing that Defendant's refusal to rescind or remove the recorded Mortgage constituted a continuing or additional publication that would support a claim for slander of title. (*See* Pls.' Resp. at 6–8.) Unfortunately, Plaintiffs cite no authority in support of this proposition. (*See id.* In fact, the law in Alabama, as pointed out by Defendant, clearly cuts against this publication theory. (*See* Def.'s Reply at 11 n. 4.)

■■■■■ As Defendant rightly states, Alabama follows the "single publication rule" in slander and libel actions. (Def.'s Reply at 11 n. 4.) This rule maintains that any single, integrated publication, such as one edition of a newspaper, book, or magazine, is treated as a single unit, giving rise to only one cause of action for libel or slander. *See Proctor,* 579 F.2d at 880 n. 7; *see also Akin v. Time, Inc.,* 250 F.Supp. 306 (N.D.Ala.1966); *Age–Herald Publishing Co. v. Huddleston,* 207 Ala. 40, 92 So. 193 (1921). Thus, the "ongoing publication" theory on which Plaintiffs' argument rests is clearly contradictory to the "single

publication" rule, which would consider the sole publication for slander of title purposes the initial Mortgage recording.[6] As noted above, it is undisputed that Defendant had no knowledge that would lead it to doubt the validity of the Deed at the time that the Mortgage was recorded.

As the court has found that Defendant's actions were in no way malicious, Plaintiffs' slander of title to realty claim must fail. Accordingly, the court finds that Defendant's Motion for Summary Judgment is due to be granted with respect to Plaintiffs' slander of title claim.

### ORDER

Based on the foregoing, it is hereby CONSIDERED and ORDERED that Defendant's Motion for Summary Judgment be and the same is hereby GRANTED, the Parties to bear their own costs.

---

**6.** The court is mindful that, arguably, the publication previously discussed (the foreclosure notice) should also be merged into this initial publication of the Mortgage. Where two publications are so dissimilar or separate in time that they may be considered "separate and distinct," however, they may constitute separate publications. *See Proctor*, 579 F.2d at 879 (holding that foreclosure notice published 3 years after decedent's death was separate publication from the recording of the mortgage during decedent's life). In this case, just as in *Proctor*, the period of time separating the two publications (Mortgage recording and foreclosure notice publication) is lengthy (approximately two years), and they thus may constitute separate publications for purposes of the slander of title analysis.

In contrast, Plaintiffs' "ongoing publication" theory as to the initial recording of the Mortgage posits that not removing the recorded Mortgage constituted a separate publication. (See Pls.' Resp. at 6–8.) Unlike the *Proctor* case, the second publication is identical to the first, and no separate action was taken to publish the Mortgage again—rather, Plaintiffs contend that Defendant was "guilty" *of inaction*. *See Proctor*, 579 F.2d at 879, (Pls.' Resp. at 6–8). This contention is unfounded in the law.