# Pike *v.* Pettus.

*Bill in Equity to enjoin Action of Ejectment and to cancel Deed to Lands.*

1. *Parol contract for sale of lands; rule as to proof of part performance to take it out of the statute of frauds.*—To take a parol contract for the sale of lands out of the statute of frauds by part performance, and to obtain a specific performance thereof, the contract must be clearly proved, and the acts relied on as a part performance "should be so clear, certain and definite in their object and design, as to refer exclusively to a complete and perfect agreement, of which they are a part execution."

2. *Same; when specific performance will not be decreed.*—When the testimony in reference to the contract is so conflicting that it can not be said to be "clearly proved;" or when the acts relied on as a part performance are of an equivocal nature, being such as might have been done with other views than in part execution of the agreement, a court of equity will not enforce a specific performance of the contract, or grant relief depending on the existence of the contract and its validity.

APPEAL from Madison Chancery Court.

Heard before Hon. N. S. GRAHAM.

The bill in this cause was filed by William A. Pike against Samuel J. Pettus, on 18th October, 1879, to enjoin an action of ejectment which the defendant had commenced against the complainant in the Circuit Court of Madison county, and to have set aside and cancelled a deed executed by the sheriff of said county, under which the defendant claimed title. On 15th March, 1860, the complainant purchased the north-west quarter of section sixteen, township three, range two, west, and, with James Johnston and another as his sureties, executed four notes or bonds for the purchase-money. During the war Johnston paid two of these notes or bonds; and after the war suits were brought, and judgments obtained against Pike and Johnston on the other two notes or bonds. These judgments were paid by, and assigned to Johnston, who afterwards caused executions to be issued thereon, and placed in the hands of the sheriff of said county. The lands in controversy were sold by the sheriff under these executions, and were purchased by the defendant, to whom they were afterwards conveyed. The bill alleges that in 1861, the complainant bargained and sold the sixteenth section land, purchased by him, to Johnston, in consideration of his promise and agreement to pay off and discharge the notes or bonds which had been given for the purchase-money, and placed him in possession thereof, and that, in

[Pike v. Pettus.]

part performance of his contract of purchase, Johnston paid one of said notes or bonds in February, 1862, and another in March, 1862. The statement of the case made by the record in the opinion only renders it necessary to here set out the substance of the testimony of E. C. Betts, a witness examined on behalf of the complainant, to whose testimony reference is made in the opinion. He testified, in substance, that after the sale of the sixteenth section land to the complainant, the time not stated, at the request of a party who desired to purchase said land, and acting on information obtained from the complainant, the purport of which was that Johnston was then the owner thereof, he inquired of Johnston whether the land could be purchased, to which Johnston replied that "he had taken the land for his sister, Mrs. Bailey, and that it was not for sale." The witness further testified, in substance, that after the war he again inquired of Johnston whether the land could be purchased, and, if so, at what price; and that Johnston then stated that it could be purchased at what he had paid for it, the purchaser to pay him what he had paid thereon, principal and interest, and to assume the payment of the balance due on the purchase-money.

On final hearing, had upon pleadings and proof, the chancellor was of the opinion that the complainant was not entitled to relief, and caused a decree to be entered dismissing the bill. That decree is here assigned as error.

CABANISS & WARD and WALKER & SHELBY, for appellant.

BRANDON & COOPER, contra.

STONE, J.—The present case must be disposed of on the principles which obtain in suits for specific performance of a contract for the sale and purchase of land, of which there is no agreement, or note or memorandum thereof in writing, "subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing."—Code of 1876, § 2121. In Waterman on Specific Performance, § 265, it is said: "The parol agreement must be clearly proved, in order to take it out of the statute by part performance. . . Equity will not enforce specific performance of a parol agreement, if the evidence of such agreement is contradictory." And in 1 Sto. Eq. Jur., § 762, it is said: "In order to make the acts such as a court of equity will deem part performance of an agreement within the statute, it is essential that they should clearly appear to be done solely with a view to the agreement being performed. For, if they are acts which might have been done with other views, they will not take the case out of the

[Pike v. Pettus.]

statute, since they can not properly be said to be done by way of part performance of the agreement." After mentioning certain acts which are insufficient, this author proceeds to say, that it is not enough, when the proof only shows acts of an equivocal nature; but that to be deemed a part performance, the acts " should be so clear, certain, and definite in their object and design, as to refer exclusively to a complete and perfect agreement, of which they are a part execution."—See also, 1 Brick. Dig. 692, § 768.

The contestants in this case are agreed on the following facts : That the lands which gave rise to the present controversy were sold by commissioners, being part of a sixteenth section, and were purchased by Pike, the complainant in this suit; that Pike, the purchaser, gave his notes or bonds in four annual installments for the purchase-money, and James Johnston became one of his sureties on said notes or bonds ; that the purchase was made in 1860 ; that Johnston paid the first two installments of the purchase-money in Confederate treasury notes, without suit; that after the war suit was brought on the remaining two installments, and judgments recovered against Pike and Johnston ; that Johnston paid these judgments, and took an assignment of them to himself ; that Mrs. Bailey, sister of Johnston, went into possession of said lands, part of said sixteenth section, in 1861, and remained in possession some four to six years ; that Mrs. Bailey had children, all under age at the time she took possession, of whom Johnston, her brother, was guardian. There are other facts, about which there is no contest. Under executions issued on said judgments, which had been paid by, and transferred to Johnston, other lands of said Pike were levied on and sold by the sheriff, and bid off by Johnston for, and in the name of Pettus, the appellee. When these lands were offered, and before the sale was made, notice was proclaimed to the by-standers, at the instance of Pike, that Johnston, in paying the purchase-money of said sixteenth section land, was only paying a debt which he had made his own, and that therefore he had no rightful claim against Pike, in virtue of said judgments or their payment. We think Pettus must be charged with notice of this proclamation, either as having heard it made, or by admitted notice given to Johnston, his agent, who made the purchase. Johnston testified he heard the proclamation made, and Pettus is not examined as a witness. He was present at the sale. We are satisfied of another fact : That in 1861, Pike, by verbal agreement, sold the said sixteenth section purchase, and that under that verbal agreement to sell, Mrs. Bailey and her children took and retained possession of the lands. Pettus instituted an action of ejectment to recover the lands so purchased at sheriff's sale,

[Pike v. Pettus.]

and thereupon Pike filed the bill in this cause to enjoin the action of ejectment.

The bill avers that in 1861, by oral agreement between Pike and Johnston, the latter agreed to take the purchase off Pike's hands, and to become himself the principal in the purchase-money notes or bonds. That in pursuance of this agreement, Johnston took possession by placing his sister, Mrs. Bailey, and her family in possession; and that in like pursuance of the agreement, he, Johnston, paid the first and second of the purchase-money notes or bonds. These averred facts are relied on, as bringing the contract within the saving clause of the statute of frauds. The answer denies the agreement *in toto*, and sets up that Johnston paid the purchase-money notes because he, Johnston, was liable upon them, and further, that he paid them at the request, and for the accommodation of Pike. The testimony makes this case hinge on the following inquiries: Did Johnston purchase the lands from Pike as alleged—did Mrs. Bailey take possession under Johnston's purchase—and did Johnston pay the purchase-money notes in part performance of the purchase made by him; or, was the purchase made by Mrs. Bailey and her children, with the expectation on Pike's part, that the money would be paid to him by Johnston, out of the effects of the Bailey children, in his hands as their guardian. The chancellor ruled out a good deal of the testimony; but, for the purposes of this opinion, without passing on its legality, we will consider all the testimony which bears on the question of the alleged oral contract, as properly before us.

There is not a marked difference, either in the weight of the testimony, or in the number of witnesses on the opposing sides of the question, whether in fact such contract was made by Johnston. We can not affirm that the alleged oral agreement is "clearly proved." It is manifest the testimony is very contradictory. Neither are the acts relied on as part performance so clear, certain and definite in their object and design, nor do they refer exclusively to the alleged agreement, so as to come up to the rule. Johnston was bound, equally with Pike, for the payment of the purchase-money, and hence no sufficient inference can arise from the payment by him, nor does the taking of possession by Mrs. Bailey tend to show Johnston had purchased. Its natural tendency would rather be that Mrs. Bailey or her children were the purchasers. Nor can we regard the testimony of the witness Betts, after eliminating what Pike had said to him, as pointing necessarily to the fact that Johnston was the purchaser from Pike. Altogether, the testimony is in too much conflict to produce that clear conviction, which should never be dispensed with in suits for specific performance of oral contracts for the sale of land.

Affirmed.