This appeal arises from a suit for specific performance to convey real property filed by Kenneth J. Steiner against The Merchants National Bank. A motion to intervene and a counterclaim were filed by Robert I. Gulledge. Steiner amended the complaint once to seek damages for breach of contract and again, after the close of evidence, to seek damages for fraud. The trial court, sitting without a jury, rendered a verdict and final judgment for Steiner against the Bank in the amount of $200,000 and against Gulledge denying his counterclaim. The Bank and Gulledge appeal. We affirm in part and reverse in part.
Kenneth J. Steiner (Steiner) leased 320 acres of land in Baldwin County, beginning in 1974, from The Merchants National Bank of Mobile (Merchants), which held the land in trust. The land, described as the west half of Section 13, Township 8 South, Range 4 East, Baldwin County, Alabama, was part of a large tract which the bank administered under the will of John D. Clarke, and some of which Merchants had previously sold, including 160 acres, bordering the land in question, to Steiner. When Steiner leased this land in 1974, he moved into a house on it and began to farm it. The lease was in writing and required him to repair and maintain buildings and fences on the land.
In the fall of 1976 Steiner learned that Merchants intended to sell the 320 acres, and he began negotiating with Don Harper (Harper), a Vice President and Trust Officer of Merchants, about buying the property. On September 29, 1976, Harper sent Steiner a letter extending Steiner's lease, due to expire at the end of the year, until May 31, 1977. This extension was to allow Steiner to harvest his winter crop, but was conditional upon Merchants' not having received an acceptable offer for the land as of January 1, 1977.
On November 19, 1976, Steiner sent Harper a letter offering to buy the property for $560.00 per acre, subject to approval of a loan from the Federal Land Bank. Harper replied by letter on December 7 that "this acreage should sell for not less than $750.00 per acre, as is. . . . If you wish to submit an offer in line with our thinking please prepare a written offer so we can take it up with our Director's Trust Committee." Steiner wrote back on December 15 and increased his bid to $625.00, enclosing a $1,000.00 check "for deposit." The copy of this letter introduced into evidence shows a handwritten note, dated12-22-76 and initialed DH, to the effect that Steiner "authorized increase of offer to $675.00" per acre, on condition that the roadway easement across the land would be temporary.
Harper wrote back on December 29, stating in part:
 I indicated to you on the phone that we cannot at this time recommend an offer of less than $700.00 per acre net to the Trust with the understanding that an 80 foot wide right-of-way would be reserved. . . . *Page 17 
 We are holding your earnest money deposit check of $1,000.00, however, if you do not feel that you have an interest in the property along these lines, please let us know and we will promptly return your check.
Harper returned the check on January 5, 1977.
On Tuesday, January 11, Harper went out to the property and had a conversation with Steiner. There is some dispute as to precisely what was said: Steiner testified that he offered Harper $700.00 per acre subject to the easement and that Harper told him that the offer would be accepted and that he could go ahead with improvements on the farm. Harper testified that he merely told Steiner to submit the offer in writing so it could go before the Trust Committee on Thursday morning. After the conversation at his farm, Steiner went to the bank and had a secretary type onto a form Steiner's offer of $224,000, to be paid "in full upon approval of loan through Federal Land Bank." Steiner signed this offer and gave it to Harper, along with a check for $500.00.
On Wednesday afternoon, January 12, Harper received a telephone call from Robert Gulledge (Gulledge). Gulledge asked Harper if there was any of the Clarke property for sale. Gulledge testified at trial that he had recently sold property and was looking for additional investment property. He testified that Harper
 told me that there were properties for sale, various parcels, that had been advertised and had been on the market for some time. I discussed with him my familiarity with the West half of Section 13 and he told me that there were offers that would be submitted to the trust department or trust committee on the following morning and I had asked him if it would be possible for me to make an offer.
Gulledge made out an offer for $235,200 on a standard form and deposited it in the bank's night depository that evening. When the trust committee met on Thursday morning, January 13, it had before it Gulledge's offer, Steiner's, and one from Gordon Brent for $230,000. The committee voted to accept Gulledge's offer. Harper so informed Steiner by telephone on the following Monday.
Some time later — the testimony was conflicting as to just when — Gulledge came out to the farm and he and Steiner talked. Steiner testified that
 [H]e [Gulledge] said the bank had contacted him and told him about the property and it was for sale and he made an offer. And the second time I met him at his place of employment, the bank in Robertsdale and, excuse me, we sat there and discussed it. We met several different times and we discussed it and he said that — we were just talking and anyway he volunteered the information to me. He said that the — that someone at the bank, I do not remember the name, had called him, it wasn't Don Harper, on the morning, Wednesday morning, before the trust department was to meet and said that they had such and such a property for sale and was he interested. . . . [H]e called them back that afternoon and he said, "What is the price?", and he said they told him that they had accepted an offer of seven hundred dollars. . . .
This testimony came out on cross-examination by defendant, with no objection or motion to exclude the evidence made; when questioned on re-direct Steiner reiterated that
 He told me that the bank had told him that they had accepted an offer of seven hundred dollars and he went five percent above that.
Steiner amended his complaint at the close of evidence to add a count in fraud, relying essentially on this evidence. Gulledge, after buying the property for $235,200, sold it for $480,000; this deal would have closed in July of 1978 but for the lis pendens notice. Steiner continued to lease the land from Gulledge; the testimony is conflicting, some saying that he held over after his lease through the entire year of 1978, and Steiner saying that he lived on the property from about 1974 to 1977. *Page 18 
Steiner filed a complaint for specific performance in the Circuit Court of Baldwin County on June 27, 1978, attaching a copy of the offer he submitted to Merchants on January 11, 1977. The next day he filed a lis pendens notice on the property in the Probate Office. Gulledge learned of the lis pendens when the Federal Land Bank refused to go through with a loan for the sale Gulledge was negotiating; he filed a motion to intervene as a party defendant and an answer and counterclaim on September 29. The counterclaim sought damages for slander of title, loss of income, and the hire and use of the property; it also sought recovery of possession of the property from Steiner and to have the lis pendens notice declared null and void.
Gulledge filed a motion for partial summary judgment on December 11; the court granted this motion on December 21, ordering that the lis pendens notice be declared null and void.
Steiner, on December 29, filed an amended complaint seeking damages, alleging an agreement between Steiner and Merchants and Merchants' refusal to convey the property under the agreement. Merchants answered on January 19, 1979, denying the allegations, and the case went to trial on September 5. After the close of evidence, but before judgment, Steiner amended his complaint on November 15 to add a count in fraud. Merchants filed an objection to this amendment and a motion to dismiss or strike on November 19, and then an answer to the amended complaint on December 31.
The trial court issued its decree on February 28, 1980. The findings of fact were to the effect that Merchants "informed a second bidder of a different and larger bid which would be acceptable" and that it "had undertaken a duty to the Plaintiff to inform Plaintiff of the size of bid which would be acceptable to purchase the lands." The damage to Steiner was that he "was not the successful bidder for the property," and the court therefore found in favor of Steiner and against Merchants in the amount of $200,000.
As to Gulledge's counterclaim, the court found that he was "not damaged in that the Lis Pendens filed by Plaintiff Steiner did not affect the title of Plaintiff/Intervenor Robert R. Gulledge to the lands nor prevent the sale of the land. . . ." The court therefore found against Gulledge in favor of Steiner.
Gulledge and Merchants appeal this judgment and ask that the case be reversed and remanded to another judge in Baldwin County.
Steiner alleges that a contract to convey the land, or at least promissory estoppel, arose by virtue of his dealings with Harper. His further allegation of fraud raises problems of procedure and of the statute of limitations, but, due to the uncertain basis of the trial court's holding, we will bypass these problems and address the merits of Steiner's fraud allegations.
Gulledge's counterclaim and the trial court's denial thereof raise another set of issues. These are: Did the trial court err in denying Gulledge damages either for slander of title, or for interest expense and loss of income during the period that his sale was delayed by the lis pendens notice, or for Steiner's alleged holding over after the expiration of his leave?
A. Steiner's judgment against Merchants.
1. The contract claim.
From the facts set out above, it is clear that Steiner and Merchants had no written contract for the conveyance of this land. Steiner argues that under the circumstances the document he signed on January 11, 1977, was an acceptance of an offer by Harper to sell the land for $700 per acre. We hold otherwise, not only because Harper explicitly was soliciting offers which could be accepted only by the Trust Committee of the Board of Directors, but also because the document Steiner executed was a conditional offer rather than an acceptance.
Steiner argues that even if no written contract existed, this case comes under the part performance exception to *Page 19 
the Statute of Frauds. See Code 1975, § 8-9-2 (5) and annotations thereto. To come within this exception, the putative purchaser must be put in possession by the seller and must pay the purchase price or a portion thereof. Caron v.Teagle, 345 So.2d 1331 (Ala. 1977). "A possession taken as a lessee, and continued without visible change, does not tend to prove that such occupant was put in possession by the owner, and is not an act tending to give notice of a change of holding." Reynolds v. Bryant, 281 Ala. 372, 202 So.2d 734
(1967). The possession must refer exclusively to the contract sought to be enforced; part performance or payment may be inferred from the construction of improvements, but only if performed under the contract of sale. Quinlivan v. Quinlivan,269 Ala. 642, 114 So.2d 838 (1959).
Steiner testified that Harper told him on the morning of January 11 to "Go ahead and start your improvements and whatever you want to do. It will have to go before the bank committee." Steiner also testified that Harper "said it would be approved at the meeting on Thursday with the trust department and I needed to go over and fill out the form at the bank." Steiner alleges that these representations, together with his $500.00 deposit and the fact that he performed work on the farm thereafter constitute an oral contract taken out of the Statute of Frauds by part performance.
We disagree. An oral agreement to convey an interest in land must be "clearly proved." Pike v. Pettus, 71 Ala. 98 (1881). Even in Steiner's words, all of Harper's assertions were equivocal or outright assertions that a contract could only be made by the Trust Committee. As to part performance, the repairs Steiner made — to fences on the property and to plumbing in the farmhouse — were required under the terms of his lease; therefore, even if he was in fact relying on an understanding that he had secured the contract, these acts are not so indisputably related to the contract sought to be enforced as to take it out of the Statute of Frauds. Finally, the $500.00 check was attached to Steiner's conditional offer under the provision that
 Cashier's or certified check in amount of $500.00
hereto attached as earnest money deposit to be applied on purchase price or returned to me if this offer is not accepted.
Such a deposit does not indicate an oral agreement such as the partial payment exception was meant to protect.
Steiner asks on appeal that if we find no contract, we should affirm the judgment on promissory estoppel grounds. This Court applied the following definition of promissory estoppel from Restatement (First) of the Law of Contracts, § 90, in Bush v.Bush, 278 Ala. 244, 177 So.2d 568 (1964), and Mazer v. JacksonInsurance Agency, 340 So.2d 770 (Ala. 1976):
 A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.
Id. at 772-73. We do not find that any actions which Steiner has taken are such that "injustice can be avoided only by enforcement of the promise" which Steiner testified that Harper made.
Nor can Steiner use estoppel as an affirmative device to create a contract where none otherwise exists. As stated inMcCarty v. Gant, 248 Ala. 668, 29 So.2d 136 (1947):
 Another principle well settled in the law is that, "estoppels . . . are protective only, and are to be invoked as shields and not as offensive weapons, and that their operation should be limited to saving harmless, or making whole, the person in whose favor they arise, and they should never be the instruments of gain or profit."
Id. at 670-71, 29 So.2d 136 (citations omitted).
2. The fraud count.
The trial court's decree appears to sound in fraud; the court below found "That by its actions the Defendant had undertaken a *Page 20 
duty to the Plaintiff to inform Plaintiff of the size of bid which would be acceptable to purchase the lands." Based on Merchants' failure to so inform Steiner, the court issued a decree in Steiner's favor in the sum of $200,000. We have serious questions whether the amendment to the complaint after the close of evidence to include the fraud count was proper under Rule 15 (b), A.R.C.P.: Steiner's only allegation that fraud was tried by consent was that Merchants and Gulledge failed to object to Steiner's testimony concerning his conversations with Gulledge. This is a meager development of an unpleaded issue, especially in light of the requirement that fraud be pleaded with particularity. See Caron v. Teagle,345 So.2d 1331 (Ala. 1977). Moreover, the amendment raises questions of the statute of limitations, Code 1975, § 6-2-3, even if it is deemed to relate back to the original complaint. Steiner learned of the alleged fraud early in 1977 but did not file suit until June 27, 1978. The code section cited provides that an action based on fraud may be filed within a year of discovery of the fraud, but Steiner failed to file within this period.
However, because the record does not indicate why the trial court ruled against Merchants on these defenses, we rule not on these issues but on the merits of the alleged fraud itself. We find no evidentiary basis for the legal duty imposed upon Merchants by the trial court. Steiner alleges that a confidential relationship arose between him and Merchants. He first asserts that this confidentiality arose because of their landlord-tenant relationship, but this is clearly spurious; any duties between the two as landlord and tenant would not carry over to create extraordinary duties concerning their negotiations as prospective vendor and purchaser.
Steiner asserts further that a duty arose because of the ongoing negotiations between him and Harper. It is true that "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud," and that "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Code 1975, § 6-5-102. We hesitate to affirm a holding, however, that because a seller has dealt with one prospective buyer it cannot solicit higher bids without informing the negotiating party. As Merchants correctly points out, part of its duty in this case was to the beneficiaries of the trust under which it was administering the property. Even if it did make the phone call to Gulledge and inform him of the bid from Steiner, such action — while perhaps questionable — is to some extent consistent with its duty to receive as high a price for the trust as possible.
B. Steiner's decree against Gulledge.
1. Damages for holding over.
Gulledge claimed damages from Steiner for holding over under Code 1975, §§ 6-6-310 and -314 (unlawful detainer) and §6-5-212 (bare right of possession). The trial court denied him relief and he appeals.
The evidence is conflicting and confusing as to what sort of arrangement Steiner made with Gulledge to remain on the property (apparently they had an oral lease) and also as to just when Steiner moved off of the property. The critical factor in our consideration is that Gulledge failed to prove that he gave Steiner notice that his lease had expired and that he was to move. Gulledge testified that he mailed such a notice to Steiner, but he did not have a copy of it. When asked whether he sent it by regular or by certified mail, he answered:
A. I do not know.
Q. You just wrote him a plain letter?
A. I believe it was registered.
Q. You don't have a copy of that registration?
A. No.
Such notice is crucial under the unlawful detainer statute.Zion Star Baptist Church v. Hart, 228 Ala. 24, 152 So. 44
(1934). Although § 6-5-212 provides "damages for the withholding of" the right of possession, we do not consider such right to be withheld *Page 21 
until it has been demanded. Because there was conflicting evidence on whether Steiner received notice, we hold that the trial court is due to be affirmed on this count under the oretenus rule.
2. Loss of income and interest expense.
Gulledge asserts that the delay in closing his sale to Otto Schoen cost him interest on the mortgage he had on the property and lost him income from interest on the $245,000 profit he made on the sale. This delay was from July 5, 1978 (when the Federal Land Bank approved Mr. Schoen's loan but refused the loan for the property with the lis pendens notice on record) to January 1979 (when the sale actually closed). Gulledge testified that his mortgage was at 8 1/2% and that a reasonable return on the profit also would have been 8 1/2%, coming to around $19,000 for both sums for the period.
Relative to Gulledge's claim, the trial court's only finding of fact was "That the Third Party Plaintiff/Intervenor Robert R. Gulledge was not damaged in that the Lis Pendens filed by Plaintiff Steiner did not affect the title of Plaintiff/Intervenor Robert R. Gulledge to the lands nor prevent the sale of the land by Third Party Plaintiff/Intervenor." Although this finding is not supported by the evidence, we affirm the denial of relief because we hold that Gulledge failed to prove a claim for slander of title as a matter of law. If the filing of the lis pendens was proper, the delay caused thereby was not wrongful.
3. Slander of title.
The maintainability of this claim depends upon the basis of the lis pendens notice. The elements of a slander of title action are:
 (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).
Womack v. McDonald, 219 Ala. 75 at 76-77, 121 So. 57 (1929). Even if we concede some type of falsity in Steiner's complaint for specific performance, we are unable to find any malice in Steiner's actions. If a bona fide suit is filed on a colorable claim to property, no malice can be inferred from failure of the action. "Even though false, if the defendant had probable cause for believing the statement, there can in law be no malice; and, though the fact that there was a want of probable cause for believing the statement is evidence of malice, it is not conclusive of its existence, nor its legal equivalent."Coffman v. Henderson, 9 Ala. App. 553, 63 So. 808 (1913). See also Harrison v. Mitchell, 391 So.2d 1038 (Ala.Civ.App. 1980), and Proctor v. Gissendaner, 579 F.2d 876, supplemented587 F.2d 182 (5th Cir. 1978). The record is devoid of any evidence of malice on Steiner's part.
The fact that the alleged slander took the form of a lis pendens notice further undercuts Gulledge's claim. Code 1975, §35-4-131 (a):
 When any civil action or proceeding shall be brought in any court to enforce any lien upon, right to or interest in, or to recover any land . . ., the person . . . commencing such action or proceeding . . . shall file with the judge of probate of each county where the land or any part thereof is situated [a lis pendens notice].
(Emphasis added). The mandatory nature of this section requires that any wrong committed by Steiner would have to be in filing his suit, not in filing the lis pendens notice. Both the lack of malice discussed above and the fact that the trial court held in Steiner's favor eliminate the possibility that Gulledge could recover.
The judgment of the trial court is reversed as to the claim against Merchants and affirmed as to Gulledge's counterclaim.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., MADDOX, FAULKNER, JONES, ALMON, EMBRY and ADAMS, JJ., concur. *Page 22