504 So.2d 226 (1987)
William S. LAWSON
v.
Dewayne CAGLE.
85-684.
Supreme Court of Alabama.
January 23, 1987.
Rehearing Denied March 20, 1987.
Charles E. Sharp and Mac B. Greaves of Sadler, Sullivan, Sharp & Stutts, Birmingham, and Jerry W. Jackson, Haleyville, for appellant.
Bill Thomason, Bessemer, for appellee.
C.R. McRae, Pascagoula, Miss., for amicus curiae Mississippi Trial Lawyers Assoc.
William H. Atkinson, John H. Bentley, and James K. Davis of Fite, Davis, Atkinson & Bentley, James Clark Cashion and Bill Fite, Hamilton, and H. Neal Cook, Samuel L. Masdon III, and Hobson Manasco, Jr., Haleyville, and Jerry F. Guyton, Nelson Vinson, and Oliver Frederick Wood of Vinson & Guyton, and Charles Harry Green, Hamilton, amici curiae in support of appellant Lawson's position.
PER CURIAM.
The defendant is an attorney; the plaintiff is a former client of the defendant's. This is a fraud action, not a legal malpractice action. The jury awarded the plaintiff $2,500,000.
The pertinent facts are as follows: The plaintiff was seriously injured in an accident which occurred in Mississippi in July of 1972. Plaintiff obtained Alabama counsel in November 1972. In July 1977, five years after the accident, Alabama counsel contacted the defendant, an attorney of stature in Mississippi, to assist him in the plaintiff's case. Suit was filed in Mississippi *227 in the summer of 1978. The suit was dismissed by the trial court on June 12, 1979. Defendant and plaintiff's Alabama counsel had a disagreement about how then to proceed. The fraud alleged in the present suit was the representation allegedly made to the plaintiff by the defendant to get the plaintiff to discharge his Alabama counsel and to allow the defendant to have sole control of the litigation, after the suit had been dismissed.
What the representation was depends upon whether we accept the plaintiff's testimony at deposition or at trial, for it varies.
At deposition, the plaintiff testified that the defendant did not tell the plaintiff that the defendant could definitely get the case reinstated in court, but that if he could get it before a jury, the defendant guaranteed the plaintiff a million dollars: "He [defendant] said that if we could get it in court that he said that he could guarantee me a million dollars, you know and if we can get it in front of a trial, a jury." "[I]f he could get it before a jury ... he would guarantee me a million dollars." "He didn't tell me definitely that he could [get it back into court]." "[H]e didn't say for certain." "[H]e wasn't absolutely [sic]. He didn't tell me definitely that he could get it in court." (Emphasis added.) These were the only statements before the trial court when it overruled defendant's motion for summary judgment. At trial plaintiff testified that the defendant told the plaintiff: "Dewayne I will promise you I can get it into court. I have done talked to the judge, and I will promise you a million dollars, your part, and he said `It will not be no year or two like you have been having to wait.'"
Plaintiff must prove that the defendant made an untrue statement concerning a material existing fact. A material fact is one which would induce the plaintiff to take action. Bank of Red Bay v. King, 482 So.2d 274, 282 (Ala.1985). Clearly, there was evidence that the statement induced the plaintiff to discharge his Alabama attorney and proceed in the manner recommended by the defendant. An "existing fact" means what this phrase implies. Normally, it does not encompass a promise of future performance. Russellville Production Credit Ass'n v. Frost, 484 So.2d 1084, 1086 (Ala.1986); Kennedy Electric Co. v. Moore-Handley, Inc., 437 So.2d 76, 80 (Ala.1983).
A promise of future performance can support a cause of action for misrepresentation, if the plaintiff produces evidence, direct or circumstantial, that the defendant, at the time the promise was made, did not intend to perform. Russellville Production Credit Ass'n v. Frost, supra. There was direct evidence that the defendant knew that the plaintiff's cause of action was hopeless, worthless, at the time the representation was made, so the mere fact that the remark related to future performance would not defeat plaintiff's cause of action.
Normally, an "existing" fact does not include an opinion (Hutchins v. State Farm Mutual Automobile Ins. Co., 436 So.2d 819, 824 (Ala.1983); Lucky Manufacturing Co. v. Activation, Inc., 406 So.2d 900, 905 (Ala.1981); Harrell v. Dodson, 398 So.2d 272, 273 (Ala.1981); Ray v. Montgomery, 399 So.2d 230, 232 (Ala.1980)); or a prediction (W. Keeton, W. Dobbs, R. Keeton, and D. Owen, Prosser and Keeton on the Law of Torts, n. 6, § 109, at 762 (5th ed. 1984): "Ordinarily a prediction as to events to occur in the future is to be regarded as a statement of opinion only, on which the adverse party has no right to rely"). However, a client who asks the opinion of his attorney on a point of law may assume that the attorney has special knowledge of the law and is entitled to a honest opinion from him on which the client may justifiably rely. 3 Restatement (Second) of Torts, p. 99, § 545 (1976).
Neither attorneys, nor trial judges, nor jurors, nor clients can know the results of litigation until after the deliberations of an unbiased trier of fact. The value, if any, of this lawsuit is determined by the trier of fact solely on the law and the facts admitted into evidence. Therefore, the amount that a client will receive when his *228 or her case is finally concluded is something that an attorney cannot know, and the expression of such an opinion or prediction by an attorney is something on which no client has a right to rely. Regardless of whether the attorney represents this as an opinion or as a fact, it is not of a character which would justify a reasonable reliance, for this could not be known and the client must know that this could not be known unless something had been done to pervert the orderly administration of justice.
Clearly, in the plaintiff's deposition testimony, the defendant did no more than make a prediction, a conditional prediction, relating to a future event (a million dollar verdict), which itself was contingent upon the occurrence of a future event (getting the case before a jury). This was not a representation of a material existing fact, which is the foundation stone of a cause of action for misrepresentation/fraud. Likewise, the million dollar figure was mere "puffery," which does not constitute actionable fraud, Lucky Manufacturing Co. v. Activation, Inc., supra; a mere opinion of value (amount which plaintiff would receive from this litigation), which does not constitute actionable fraud. Lake v. Security Loan Ass'n, 72 Ala. 207 (1882). Therefore, the trial court committed reversible error when it overruled the defendant's motion for summary judgment, since there was no evidence as to one of the essential elements of plaintiff's cause of action. Motes v. Matthews, 497 So.2d 1121 (Ala. 1986); Harbison v. Albertville National Bank, 495 So.2d 1084 (Ala.1986).
The plaintiff had no right to rely upon the defendant's alleged statements that plaintiff testified to at trial. He could not reasonably do so. The amount of any recovery plaintiff might receive could be known by the defendant only if the proper administration of justice had been perverted. The trial court, having erred in denying summary judgment, erred again in not granting defendant's motion for a directed verdict, and then in not granting a JNOV.
It is prudent to reiterate that this is not a legal malpractice action, but a fraud action.
The judgment is reversed and judgment rendered for the defendant.
REVERSED AND JUDGMENT RENDERED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY and STEAGALL, JJ., concur.
MADDOX, ADAMS and HOUSTON, JJ., concur specially.
MADDOX, Justice (concurring specially).
I concur in the result reached because I believe that Cagle failed to prove his fraud claim, but by concurring to reverse this judgment, I should not be understood as holding that a fraud claim would never be appropriate against an attorney. This Court has allowed the maintenance of fraud actions against individuals in varying circumstances, and there can be a case where a fraud action could be proved against an attorney,[1] but I do not believe this is one of those cases.
The thrust of Cagle's fraud suit against Lawson was his allegation that Lawson made an unconditional or absolute promise that if Cagle would fire Lanny Vines, he (Lawson) would get the suit against International Harvester reinstated in the federal district court in Mississippi, and would obtain a verdict in Cagle's favor of one million dollars.
Although there is some difference between the substance of the alleged misrepresentation as set out in Cagle's deposition testimony and as set out in his testimony at trial, as is pointed out in the majority opinion, at trial Cagle stated the substance of the alleged representation Lawson made to him as follows:
"So, I asked Mr. Lawson, I said, `Mr. Lawson, you told me that if Lanny was out of the way you could get it into court, and you told me what all he has *229 done wrong and all, but I am not going to fire him, not until you tell me whether or not you can get my case into court,' and he said, `Dewayne, I will promise you I can get it into court. I have done talked to the Judge, and I will promise you a million dollars, your part,' and he said, `It will not be no year or two like you have been having to wait.'"
In order to prevail on his fraud claim, Cagle had to prove a false representation of a material existing fact upon which he relied, and prove that he suffered damages as a proximate result of that misrepresentation. Earnest v. Pritchett-Moore, Inc., 401 So.2d 752 (Ala.1981). Furthermore, since the fraud claim is based upon a promise to perform or abstain from performing in the future, Cagle had to prove also that at the time Lawson made the promise to perform the act, he had no intention to do so and had an intent to deceive Cagle. Clanton v. Bains Oil Co., 417 So.2d 149 (Ala.1982).
"Fraud" has been described as "a term so vague that it requires definition in nearly every case." Prosser and Keeton on the Law of Torts, § 105 (5th ed. 1984). In § 109 of that same treatise on the law of torts, however, the authors state the following:
"Ordinarily a prediction as to events to occur in the future is to be regarded as a statement of opinion only, on which an adverse party has no right to rely."
The reason why I believe that Cagle failed to prove actual fraud in this case is based upon the particular facts surrounding the events out of which the alleged fraud arose. At the time Cagle's suit was tried in Winston County, Alabama, on October 20, 1985, the Mississippi Supreme Court, insofar as I can determine, still had not recognized the theory of "crashworthiness" with respect to second impact accidents. The law of Mississippi is expressed in Walton v. Chrysler Motor Corp., 229 So.2d 568 (Miss.1970). The Walton case required that the defect in the vehicle must be the proximate cause or precipitating cause of the accident itself.
Cagle's suit was originally filed in a federal district court in Mississippi, apparently to avoid this problem, and his attorney sought to have the district court apply the substantive law of the State of Alabama under Vick v. Cochran, 316 So.2d 242 (Miss.1975), which stands for the proposition that the substantive law of the state with the most substantial relationship to the parties and incident involved would be applied.
The federal district court in Mississippi refused to follow Vick in Cagle's suit; therefore, it necessarily determined that the substantive law of Mississippi, under Walton, barred any viable claim against International Harvester based on the theory of "crashworthiness," and dismissed Cagle's claim against International Harvester on June 13, 1979.
Even if an appeal had been pursued in the International Harvester suit, the Fifth Circuit Court of Appeals would have been bound under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to follow the substantive law of the State of Mississippi. Bill Murphree and Thomas Lowe, attorneys practicing law in the State of Mississippi, testified that, based upon Vick and Walton, Cagle had no viable claim against International Harvester, and that an appeal would have been fruitless.
Of course, there was testimony to the contrary. Lanny Vines, a very competent Alabama lawyer, testified that, in his professional opinion, had the federal district court's judgment of dismissal been appealed to the Fifth Circuit Court of Appeals, that court would have reversed and the case would have been remanded, and on remand the case would have had a minimum settlement value of $750,000. I am of the opinion, however, that this testimony, even though given by a very competent trial attorney, was necessarily based upon what the Fifth Circuit Court of Appeals would have done had the case been appealed, and was too speculative.
Consequently, I am of the opinion that Cagle failed to prove that he had a viable suit against International Harvester under the substantive law of Mississippi; therefore, *230 he failed to prove that he suffered any damages as a result of any alleged reliance upon any statement made by Lawson, even if he had a right to rely upon the alleged representation made by Lawson.
Furthermore, even if Cagle's reliance upon Lawson's alleged promise kept him from letting Vines pursue reinstatement of the suit through an appeal, I am of the opinion that the Fifth Circuit Court of Appeals, under Erie R. Co. v. Tompkins, supra, would have been bound to follow the substantive law of the State of Mississippi, which did not recognize any recovery for Cagle under the facts of his case.
Consequently, I believe that Cagle failed to prove the necessary elements, under Alabama law, to permit his recovery on his claim of fraud, and I agree that the judgment must be reversed and judgment rendered for the defendant.
ADAMS, Justice (concurring specially).
This is an important case to the bench and bar, as well as to the public. Although plaintiff was not allowed to recover in this case, where his only theory of recovery was the theory of fraudulent misrepresentation by his attorney, we are not saying that an attorney could not be guilty of fraudulent misrepresentation. However, it is my opinion that where representations arise out of the attorney-client relationship, those suits are more properly filed as legal malpractice cases rather than fraudulent misrepresentation cases. It is interesting that this suit was originally filed as a malpractice case as well as a fraudulent misrepresentation case. Later, the malpractice action was stricken and the case proceeded to a verdict as a fraudulent misrepresentation case.
It is the law in this State that there can be no recovery for legal malpractice if the underlying case which gives rise to the malpractice case is not a viable one. That is to say, if the underlying case could not be won under any theory, then the plaintiff has not been damaged by any malpractice. Therefore, to allow the case to proceed against the attorney would give to the client a recovery to which he would otherwise not be entitled. As a practical matter, this is what occurred in this case. Although we sympathize with the plaintiff because of the injuries he has suffered, we must not forget that every personal injury does not automatically create a lawsuit upon which the plaintiff can recover. The circumstances surrounding this case compel us to conclude that plaintiff had no lawsuit from which he could successfully recover. Therefore, he conveniently attempted to recover from his attorney where he could not recover otherwise. This we cannot allow to happen. This does not mean that we condone a lawyer's making fraudulent misrepresentations, but there are means whereby a lawyer can be disciplined outside the litigation process. Our disciplinary panels are peculiarly suited to deal with this problem.
One further observation: Plaintiff testified at trial differently from the way he testified at deposition. Defendant filed a motion for summary judgment after plaintiff's deposition testimony was submitted to the trial court. In deposition, plaintiff testified that his attorney told him that if he could get his case into court, and if he could get it in front of a jury, he would guarantee him a million dollars. The record shows that the attorney was not able to get the case before a jury and was not able to keep the case in court. Under these circumstances, the plaintiff had not stated a misrepresentation; therefore, his case should have been dealt with on summary judgment. I would have ended our discussion of this case at that point. I see no need for this Court to address a new factual statement made by the plaintiff at trial which unequivocally said that the lawyer promised the client if he would fire co-counsel that he would get for the client's part a million dollars.
HOUSTON, Justice (concurring specially):
I concur with the per curiam opinion but I would extend it.
The plaintiff contends that there is no reason that attorneys should be immune from liability for their frauds. I agree.

*231 "An attorney is liable for any loss sustained by his client in consequence of the attorney's fraud or unfair dealing. Thus, an attorney who makes fraudulent misstatements of fact or law to his client, or who fails to impart to his client information as to matters of fact and the legal consequences of those facts, is liable for any resulting damages which his client sustains."
7 Am.Jur.2d, Attorneys at Law § 215, (1980).
However, the representations of this defendant do not constitute actionable fraud, for the reasons set out in the per curiam opinion.
A cause of action is absolutely necessary to help rid society of deceptions deliberately practiced in order to secure unfair advantage or unlawful gain; but a cause of action must never be nurtured which could encourage courtroom deception deliberately practiced in order to secure unfair advantage or unlawful gain, in the guise of ridding society of such deceptions, no matter what the occupation or profession of the defendant may be. A physician cannot know that a patient will be healed, and a patient has no right to rely on such a representation. An attorney cannot know that his client will prevail in a lawsuit, and a client has no right to rely on such a representation.
The cause of action for fraud presents a dichotomy, being perceived by some as a means of righting wrongs and by others as a means of perpetrating wrongs. In reviewing this case, those who blame attorneys for making fraud this riddling thing, must be reminded of words Shakespeare wrote for Macbeth: "But in these cases, we still have judgment here; that we but teach bloody instructions which, being taught, return to plague the inventor; this even-handed justice commends the ingredients of our posion'd chalice to our own lips."
Whether an action for fraud is viewed as a poison'd chalice, or a cup of veracity, it has been brought to the lips of the legal profession; and "even-handed justice" demands that we treat it as we treat all other actions for fraud, and that we treat all other actions for fraud as we treat this case. So be it.
NOTES
[1] Other jurisdictions have permitted actions for fraud to be maintained against attorneys by their clients, under proper circumstances. See Rodriguez v. Horton, 95 N.M. 356, 622 P.2d 261 (Ct.App.1980); Hall v. Wright, 261 Iowa 758, 156 N.W.2d 661 (1968); Harmening v. Howland, 25 N.D. 38, 141 N.W. 131 (1913).