This appeal is from a summary judgment entered in favor of Security Federal Savings and Loan Association ("Security Federal") and Vann Waldrop against Joe Keller and Keller Interiors (hereinafter referred to collectively as "Keller") on Keller's claims of fraud, breach of contract, civil conspiracy, and intentional interference with contractual and business relations. The University of Alabama ("University") and Walter Densmore, an employee of the University, were also defendants; the action remains pending as to those parties. The trial court certified its ruling as a final judgment pursuant to Rule 54(b), A.R.Civ.P.[1] We affirm.
Keller filed suit against Security Federal and Waldrop, alleging fraud, breach of contract, and civil conspiracy. Security Federal and Waldrop filed a motion for summary judgment, supported by the pleadings and depositions sufficient to negate at least one element of each of Keller's claims, which then shifted to Keller the burden of providing substantial evidence to support his claims. Thereafter, Keller filed an amended complaint adding the count of intentional interference with business relations. The trial court granted Security Federal and Waldrop's motion for summary judgment "on all claims against them." Keller appealed.
The issues presented for our review are whether the trial court erred in entering summary judgment on Keller's claims alleging fraud, breach of contract, civil conspiracy, and intentional interference with a business relation.
If there is substantial evidence of every element of a cause of action, summary judgment is inappropriate. Ala. Code §12-21-12; Robichaux v. AFBIC Development Co., 551 So.2d 1017
(Ala. 1989); Perry v. Hancock Fabrics, Inc., 541 So.2d 521
(Ala. 1989). Summary judgment for a defendant is proper if there is no genuine issue of material fact as to a particular element of a cause of action, and the defendant is entitled to a judgment as a matter of law. Wilson v. Brown, 496 So.2d 756
(Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381
(Ala. 1986). In determining whether there is substantial evidence *Page 153 
to support a particular element of a cause of action, this Court must review the record in a light most favorable to the nonmoving party and resolve all reasonable doubts against the movant. Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986).
Viewed in the light most favorable to Keller, the facts of this case are as follows:
Keller operates a sole proprietorship known as Keller Interiors. For several years, Keller has leased the property where his business is located from the University. Waldrop is president and chairman of the board of Security Federal, whose office is adjacent to the building where Keller's business is located.
In early fall of 1986, Keller learned of the University's interest in selling the property that he had been leasing. Keller contacted Densmore, the purchasing manager for the University in charge of handling commercial bids, and told Densmore that he was interested in purchasing the property. Densmore told Keller to make a reasonable offer and stated that he would take Keller's offer to the Board of Trustees of the University ("Board") for its approval. Subsequently, Keller sought to obtain 100% financing for the purchase of the property from John Harvard, Security Federal's managing officer. It is undisputed that Keller did not disclose to Harvard either the amount he intended to bid or the amount he needed to borrow. After Harvard informed Keller that Security Federal could lend him only 80% of the amount on a commercial loan, Keller went elsewhere to secure the funds. Thereafter, Harvard notified Waldrop of Keller's interest in securing a loan to bid on the property. Prior to this discussion with Waldrop, Harvard was unaware of Security Federal's interest in purchasing the same property. Waldrop promptly notified Keller of Security Federal's interest in the property; of the possible conflict of interest; and that, under the circumstances, it would be improper "for any of the personnel at Security Federal to learn of Keller's plans or intentions with respect to formulating and/or submitting a bid." Thereafter, Keller notified Densmore that he had obtained the necessary funds and was ready for Densmore to submit the bid to the Board. However, at that time, Densmore informed Keller that he would not take Keller's private bid to the Board, but that the property would be sold through a public bidding process and that Keller would have the same opportunity as the general public. Prior to the scheduled bid date, Densmore personally sent letters to Keller and Waldrop and telephoned them to give them notice of the bid date. Densmore also placed a public notice in the local newspaper, which read, in pertinent part, as follows:
 "Notice of Public Sale of Lot and Building by The Board of "Trustees of The University of Alabama "Tuscaloosa, Alabama
 "Notice is hereby given by The Board of Trustees of The University of Alabama, a corporation, of the Public Sale of a lot and building in Tuscaloosa, Alabama, by sealed bids, which bids will be publicly opened in the office of [Walter Densmore,] the Director of Business Services, Purchases and Stores. . . .
". . . .
 "The minimum acceptable bid is $59,500.00. All bids shall be valid for a period of thirty (30) days from date of bid opening. Each bid shall be accompanied by ten percent earnest money deposit in the form of cash, a certified check, or cashier's check. Earnest money deposits shall be returned to unsuccessful bidders after award of bid. Any successful bidder's earnest money deposit shall be applied against purchase price.
 "The University reserves the right to reject any and all bids. All bids shall be deemed offers for the purchase of the above described property and will be subject to the approval of the Board of Trustees of the University of Alabama, a corporation. Written notification to a bidder that his bid is successful shall be deemed acceptance of his offer. The terms of sale are cash at closing. The University will provide a Statutory Warranty Deed to the property. . . ." *Page 154 
Keller was the only bidder on the bid date, submitting a bid in the amount of $80,300 accompanied by an $8,000 cashier's check payable to the University. Thereafter, Densmore told Keller, "I guess you bought yourself a piece of property." A few days later, counsel for the University contacted Keller to obtain information for preparing a deed for the property for the Board's approval, but no papers were ever sent to the Board. Keller was aware at the time he submitted his bid that the University reserved the right to reject any and all bids and that all bids were subject to the approval of the Board. At no time did the University send Keller written notification that his bid was successful, nor did the University waive any of the provisions or conditions of the notice.
Sometime after the scheduled bid date, Waldrop realized that he had missed the date and notified Densmore that he would like an opportunity to submit a bid on behalf of Security Federal. Thereafter, by the following letter, Densmore informed Keller that the University would not sell him the property:
 "As we discussed during our telephone conversation on December 17th, the University did not accept your bid because it exercised its right to reject all bids as provided for in the bid notice. At the time the decision was made by the University to solicit bids for the purchase of the property, the University had anticipated that there would be substantial interest in acquiring this property. When only one bid, yours, was received, the University decided that the best interest of the University would be served by deferring the sale of this property to a future date when there may possibly be greater competition to acquire the property.
 "The University is appreciative, however, of your interest in purchasing the property. In the future if the University again solicits bids for the purchase of the property located at 2305 University Boulevard, the University hopes you again will be interested in submitting a bid."
At the same time, Densmore informed Keller that he could lease the property for another year.
Robert Wright was vice-president of financial affairs and treasurer of the University; his deposition revealed that he and Densmore were curious as to Security Federal's failure to bid but "assumed that we would accept [Keller's] bid since we would assume everybody was notified properly." Sometime thereafter, Densmore reported back to Wright that Waldrop and Security Federal had a tremendous interest in the property. Wright and Densmore discussed the best position for the University to assume since they had two interested parties, but only one bid. Keller's bid was discussed with Dr. Joab Thomas, president of the University, but that bid was never taken to the Board; and Wright and Dr. Thomas decided it would be in the best interest of the University to republish for bids on the property.
In early spring 1988, Waldrop submitted a private bid of $96,000 to the University and proposed a second research project with the University. The University did not publish the property for sale at the time Waldrop submitted his private offer. Thereafter, Wright notified Waldrop that the University could not accept his private offer and that the property would have to be sold at public auction. In May 1988, Wright proposed that Security Federal would give Keller one year's free rent on the property if Security Federal were the highest bidder at the next proposed sale. During July 1988, Waldrop contributed $2,000 to the University in connection with the proposed second research project, which involved remodeling and expansion plans for Security Federal onto the property. To date, all bids have been rejected, and the property has not been sold.
 Count I
Count I asserted a fraud claim. Keller admitted that neither Waldrop nor anyone else at Security Federal ever made a false representation to him. In Pugh v. Kaiser Aluminum ChemicalSales, Inc., 369 So.2d 796 (Ala. 1979), and International *Page 155 Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala. 1977), we held that there can be no liability for fraud without proof that the defendant made an untrue statement, nor does the evidence show any circumstances under which Keller was mislead by a factual misrepresentation made by Security Federal or its agent. See, also, Lawson v. Cagle, 504 So.2d 226 (Ala. 1987). Therefore, Keller's admission that Security Federal and Waldrop never told him anything untrue defeats his fraud claim.
Keller, in his brief, argues that Densmore, purchasing agent for the University, was Security Federal's agent and made an untrue statement upon which Keller based his fraud claim. Keller's complaint did not allege an agency relationship between Security Federal and Densmore, and Keller presented no evidence of agency. See Witherspoon v. Goldome Credit Corp.,544 So.2d 946 (Ala. 1989); see, also, Wood v. Shell Oil Co.,495 So.2d 1034 (Ala. 1986); Robinson v. Allstate Insurance Co.,399 So.2d 288 (Ala. 1981).
Based on the foregoing, the trial court properly entered summary judgment in favor of Security Federal and Waldrop on the fraud claim.
 Count II
Count II alleged a breach of contract and sought specific performance against Security Federal and Waldrop. Keller admitted that he had never entered into a contract with Security Federal and Waldrop. Without the existence of a contract, there can be no breach. See Seybold v. Magnolia LandCo., 376 So.2d 1083 (Ala. 1979); see also Cocke v. Odom,385 So.2d 1321 (Ala.Civ.App. 1980). Therefore, the trial court properly entered summary judgment on the breach of contract claim.
 Count III
Count III alleged that Security Federal and Waldrop conspired with the University, Densmore, and other University officials to commit fraud and breach of contract. A conspiracy exists only when parties combine to accomplish an unlawful purpose or to accomplish a lawful purpose through unlawful means.McCaig v. Talladega Publishing Co., 544 So.2d 875 (Ala. 1989). The conspiracy is not actionable if the plaintiff cannot prove a wrong committed through the conspiracy. Speculations of misconduct fall short of proof thereof. See Webb v. Renfrow,453 So.2d 724 (Ala. 1984). Before we can determine the existence of the alleged conspiracy, Keller must first present substantial evidence of an underlying actionable wrong (in this case, fraud or breach of contract) to support his conspiracy theory. See McCaig, supra; see, also, Scott v. CommonwealthLand Title Ins. Co., 518 So.2d 102 (Ala. 1987).
Keller's fraud claim specifically alleged that "prior [to the University's breach of a contract with Keller] Defendant Densmore represented to [Keller] that his bid was accepted and that [Keller] had bought the property." In order to avoid summary judgment on this fraud claim, Keller must present substantial evidence that Densmore made an untrue statement concerning a material existing fact (a fact that induced Keller to act), which is the foundation stone of a cause of action for misrepresentation/fraud.
Fraud cannot be based on opinion. See Lawson v. Cagle,504 So.2d 226 (Ala. 1987). Whether a given representation is an expression of opinion or a statement of fact depends upon all the circumstances of the particular case. See Harrell v.Dodson, 398 So.2d 272 (Ala. 1981) (cited in Lawson v. Cagle, supra).
Keller's deposition testimony reads, in pertinent part, as follows:
 "Q. And did Mr. Densmore say anything to you at the bid opening?
"A. Yes, sir.
"Q. About the bids?
"A. Yes, sir.
"Q. Tell me what he said.
 "A. [H]e said, 'Well, I guess you're the only bidder.' So, he opened the bid, read the bid, and said, 'I guess you bought yourself a piece of property.' [Emphasis added.]
". . . . *Page 156 
 "A. At the bid opening he told me that it looked like I had bought me, myself a piece of property."
This was not a representation of a material fact, but a statement of opinion only. Densmore's statement itself and Keller's deposition — which revealed that Densmore never indicated that he individually had the power to sell the property on behalf of the University, that Keller knew the University reserved the right to reject any and all bids, and that all bids were subject to the Board's approval — support this conclusion. Based on the foregoing, we find that Keller failed to present evidence as to one of the essential elements of his fraud claim. Therefore, his claim that Security Federal and Waldrop conspired to commit fraud must fail.
Although Keller's complaint specifically alleged only one act of fraud (that Densmore told Keller that Keller had bought the property), Keller's deposition testimony, elicited by defense counsel for the University, revealed a second misrepresentation (that Densmore failed to submit Keller's private bid to the Board as Densmore had told Keller he would). Rule 9(b), A.R.Civ.P., provides that, when fraud is alleged, the circumstances constituting the fraud shall be stated with particularity. Every element need not be stated with particularity, but the pleader must state the time, the place, the contents or the substance of the false representation, the facts misrepresented, and an identification of what has been obtained. See Committee Comments to Rule 9(b); see, also,Kabel v. Brady, 519 So.2d 912 (Ala. 1987); Robinson v. AllstateInsurance Co., 399 So.2d 288 (Ala. 1981). From our review of the complaint, we conclude that Keller failed to comply with Rule 9(b). Furthermore, Keller's second fraud allegation was an attempt to predicate fraud on a promise. For a claim of promissory fraud to go to the jury, there must be evidence that, at the time the promise of future action or abstention was made, the promisor had no intention of carrying out the promise but rather had an intent to deceive. See Watters v.Lawrence County, 551 So.2d 1011 (Ala. 1989); RussellvilleProduction Credit Association v. Frost, 484 So.2d 1084 (Ala. 1986). The failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made, nor does a reckless misrepresentation constitute fraud where the alleged misrepresentation relates to some future event. SeeBenetton Services Corp. v. Benedot, Inc., 551 So.2d 295 (Ala. 1989); Russellville Production Credit Association, supra. From our review of the record, we conclude that Keller presented no evidence to prove the necessary elements of promissory fraud.
Keller's breach of contract claim specifically alleged that "[Keller] and the University entered into a contract for the sale and purchase of the subject property" but that "defendant[s] [have] failed or refused to [perform their obligation under said contract]." The Statute of Frauds requires that sales of real property must be in writing unless the purchase money, or a portion thereof, is paid, and the purchaser is put in possession of the land by the seller. Ala. Code 1975, § 8-9-2(5). "In order to satisfy the requirements of the exception [part performance], the possession must be exclusively referable to the contract in issue. Jones v. Jones, 219 Ala. 62, 121 So. 78 (1929)."Dixieland Food Stores, Inc. v. Geddert, 505 So.2d 371, 374
(Ala. 1987); see, also, Merchants National Bank of Mobile v.Steiner, 404 So.2d 14 (Ala. 1981). It is undisputed that Keller never had a written contract with the University. Although Keller paid a portion of the proposed purchase price (the $8,000 cashier's check) and was in possession of the property, Keller did not take possession under the alleged sales agreement, but rather had already had possession for several years under a lease with the University. Keller would argue that Densmore's representation that Keller had bought the property, together with the tender of his $8,000 cashier's check, constituted a valid, enforceable contract. We disagree. An oral agreement to convey an interest in land must clearly be proved. See Merchants National Bank, supra; see, also, Pike v.Pettus, 71 Ala. 98 (1881). The University, through its public notice, was *Page 157 
merely soliciting offers, which could be accepted only by written notification from the Board to the bidder that his bid was successful. See Merchants National Bank, supra. It is undisputed that Keller's bid was never given to the Board for its approval and that Keller did not receive any written notification of acceptance. Furthermore, Keller admitted that he knew that his bid was subject to the Board's approval. In addition, Keller's $8,000 cashier's check was attached to his bid pursuant to the guidelines of the University's public notice requiring 10% earnest money deposit to be made upon submission of the bid in the form of cash, a certified check, or cashier's check. Such a deposit does not indicate such an oral agreement as the partial payment exception was meant to protect. See Merchants National Bank, supra. Without substantial proof of the existence of a contract, Keller's allegation that Security Federal and Waldrop conspired to commit a breach of contract must fail.
When defendants have not committed an actionable wrong, such as in the instant case, they are entitled to summary judgment on a claim of conspiracy. Sadie v. Martin, 468 So.2d 162 (Ala. 1985). Therefore, we hold that the trial court properly entered summary judgment in favor of Security Federal and Waldrop on the civil conspiracy count.
 Count IV
Keller initially raises a procedural issue concerning the trial court's entering of summary judgment on Count IV. Count IV alleged intentional interference with the business and contractual relations between Keller and the University. Keller contends that he added this count after discovery revealed such a cause of action and after Security Federal and Waldrop had filed their motion for summary judgment. Security Federal and Waldrop's motion requested "a summary judgment in their favor on all claims against them." At the hearing on the motion, Security Federal and Waldrop argued all counts; and the trial court, over Keller's objection, considered and ruled on Count IV.
Keller contends that, because Security Federal and Waldrop submitted no written documents to refute the allegations of Count IV, the trial court lacked a written record to rule on that count. When ruling on a motion for summary judgment, a trial court may properly consider any material that would be admissible at trial and all evidence of record, as well as material submitted in support of or in opposition to the motion. Purvis v. PPG Industries, Inc., 502 So.2d 714 (Ala. 1987); see, also, Priester v. Arrow Rents, Inc., 547 So.2d 866
(Ala. 1989). After a thorough review of the record, we find that Keller's amended complaint presented no new set of facts, but only corrected corresponding numbered paragraphs in the original complaint and added Count IV based upon the same facts presented in the original complaint. Therefore, we find that the written material offered by Security Federal and Waldrop in support of their motion for summary judgment on Counts I, II, and III gave the trial court an adequate record for ruling on Count IV.
The tort of intentional interference with business or contractual relations, to be actionable, requires:
 "(1) The existence of a contract or business relation;
 "(2) Defendant's knowledge of the contract or business relation;
 "(3) Intentional interference by the defendant with the contract or business relation;
 "(4) Absence of justification for the defendant's interference;[2] and
 "(5) Damage to the plaintiff as a result of defendant's interference."
Gross v. Lowder Realty Better Homes Gardens, 494 So.2d 590,597 (Ala. 1986); See, also, Lowder Realty, Inc. v. Odom, Inc.,495 So.2d 23 (Ala. 1986).
If the tort is based on interference with a contract, the contract must be valid and *Page 158 
enforceable. Birmingham Television Corp. v. DeRamus,502 So.2d 761 (Ala.Civ.App. 1986). It is undisputed that no contract existed between Keller and Security Federal and Waldrop; furthermore, Keller did not present substantial evidence of a contract between him and the University. Keller was merely given the opportunity to bid on the property. It is undisputed that he was aware that the University reserved the right to reject his bid and that all bids were subject to the Board's approval. In addition, Keller testified that Densmore did not indicate that he individually could sell the property on behalf of the University. Given the nature of our competitive free-market economic system, the University should be able to entertain offers to purchase property from competing interested parties, see DeRamus, supra; and Security Federal, as a prospective buyer, should be able to express its interest in purchasing the property, even if its expression of interest influenced the University to reject Keller's offer. SeeDeRamus, supra.
Based on the foregoing, the trial court, considering the record before it, properly entered summary judgment on the interference with business and contractual relations claim.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Keller's claims against defendant John Harvard were dismissed at Keller's request; therefore, Harvard is not a party to this appeal.
[2] "Justification is an affirmative defense to be pleaded and proved by the defendant." Gross v. Lowder Realty Better Homes Gardens, 494 So.2d 590, n. 3 at 597 (Ala. 1986).